HUFFMAN, Appellant, v. NIXON et al.

Division One, November 14, 1899-

1. **Fraudulent Conveyance:** TO HINDER CREDITORS.  A deed of trust made to hinder and delay creditors, although recorded before the levy of attachment, should be set aside.

2. **Delivery After Record:** DEED OF TRUST: ATTACHMENT: PRIORITY. A deed of trust was made, acknowledged and recorded before the attachment writ was issued or levied, and then sent by mail to the trustee in New York, together with the note to the *cestui que trust*, who also resided in that State, but were not received by him until after the levy of the attachments and filing of the abstract thereof with the recorder.  *Held,* that the right of the purchaser at the execution sale under the attachment was prior to any right or interest conveyed by the deed of trust.

3. **Sheriff's Sale:** EQUITY OF REDEMPTION : INTEREST SOLD: ESTOPPEL. The sheriff announced at the sale that he sold the land subject to the deed of trust, but his deed conveyed to the purchaser all the right, title and interest of the maker of that instrument.  *Held,* that the deed of trust being in fraud of creditors, or not having been delivered until after the filing of the abstract of the attachments, the purchaser is not estopped to assail the deed of trust, but the sheriff's deed conveyed all the interest of the execution defendant in the land, and not simply his equity of redemption.

4. **Estoppel:** PLEADING IN FORMER SUIT. In a suit by other attachment creditors against the parties to the deed of trust and the plaintiff in this suit, who was the purchaser at the execution sale under the attachment writ, to set aside said sale, plaintiff in his answer then alleged that the land purchased by him at the sale was subject to the encumbrance of the deed of trust the validity of which by this suit he attacks, and that he purchased subject to its validity, and was ready and willing to pay the amount of the deed mentioned therein. *Held,* that he is not thereby in this suit against the trustee and the *cestui que trust,* estopped to show that the deed of trust was fraudulent, or was delivered after the levy of the attachment.

5. **Sheriff's Sale:** ATTACHMENT: INTEREST PURCHASED. The purchaser at a sheriff's sale under execution in an attachment suit, is entitled, by the levy and deed, to "all the right, title and interest" the execution creditor at the time had in the land, even though that afterwards proves to be more than he supposed and asserted it to be at the time.

*Appeal from Saline Circuit Court.*—HON. RICHARD FIELD, Judge.

REVERSED AND REMANDED (*with directions*).

W. M. WILLIAMS and JOHN COSGROVE for appellant.

(1) According to the evidence Chas. T. Kelsey was to examine the deed of trust and the abstract before he made the loan; therefore, the deed of trust did not take effect until after Chas. T. Kelsey examined and accepted it. Kuh v. Garvin, 125 Mo. 562; Cravens v. Rossiter, 116 Mo. 338. (2) If Chas. T. Kelsey ever accepted said deed of trust, its acceptance only operated from the time of such acceptance as against plaintiff, who purchased under judgments rendered in the attachment suits against J. B. Kelsey. Cravens v. Rossiter, *supra.* (a) It was for the defendants to show the exact time when the deed of trust was accepted. They alone knew the fact, and having failed to show the date of acceptance, the presumption is that it was not delivered to Chas. T. Kelsey until after the attachment liens became perfected.

Tyler v. Hall, 106 Mo. 319.   (b) J. B. Kelsey could have directed the deed of trust to be returned to him at any time before it was actually delivered to and accepted by his brother, Chas. T.   No rights could be acquired by Chas. T. Kelsey under the deed of trust until these formalities had been complied with.   Hull v. Hull, 65 Mo. 689; Cook v. Brown, 34 N. H. 460; Van Stone v. Goodwin, 42 Mo. App. 48.   (c) The delivery of the deed of trust by the grantor to the·recorder does not change the rule of law above contended for.   Cravens v. Rossiter, *supra*; Hall v. Hall, 107 Mo. 101.   (3) "The deed of trust, while apparently valid, was, in fact, fraudulent," and conferred no rights upon Charles T. Kelsey or the holders of the note.   Knoop v. Kelsey, 121 Mo. 647.   (4)   When plaintiff purchased at the sheriff's sale, he acquired all the interest of J. B. Kelsey in the land sold, and after said sale the sheriff's deed vested in plaintiff the entire interest in the land sold, subject to the right to set former conveyances aside for fraud.   Lionberger v. Baker, 88 Mo. 452; Knoop v. Kelsey, 121 Mo. 648; Gentry v. Robinson, 55 Mo. 260.   (5) The sheriff could not, by any statement, reduce the interest of J.B.Kelsey in the land. The sale by the sheriff conveyed all of J. B. Kelsey's right, title and interest in the land, and the sheriff could not limit the interest so sold by any act or statement of his.   Dodge v. Walley, 22 Cal. 224; Whipple v. Farmer, 3 Mich. 436..   (a) There is no warranty of title at sale made by a sheriff, nor has the officer any authority whatever, in his official capacity, to make any warranty or representation concerning the title or interest conveyed. The plaintiff acquired all of defendant Kelsey's title, whatever it might have been.   2 Freeman Exec. (2 Ed.), sec. 335.   (6)   This court has twice held that the deed of trust under consideration was fraudulent.   Knoop v. Kelsey, 102 Mo. 291 and 121 Mo. 647.   If it were longer an open question, the evidence clearly shows that Chas. T. Kelsey, Nixon and J. B. Kelsey

were all acting in concert to cover up J. B. Kelsey's property and to keep it out of the reach of his Missouri creditors. It is sufficient to make the deed of trust voidable, when attacked by plaintiff, who purchased the right to assail it for fraud, to show that either the trustee or beneficiary had notice of the fraudulent intent. Crow v. Beardsley, 68 Mo. 435. (a) The deed of trust being fraudulent, plaintiff can maintain this suit to set the same aside. Potter v. Adams, 125 Mo. 118; Gentry v. Robinson, 55 Mo. 260; Knoop v. Kelsey, 121 Mo. 642. (7) The deed of trust having been executed in fraud of the rights of J. B. Kelsey's creditors, nothing passed by it to either the trustee or the beneficiary. There was no equity of redemption in J. B. Kelsey, which can only exist in cases of a valid and *bona fide* mortgage or deed of trust. The existence of an equity of redemption presupposes the existence of a legal mortgage. Bullard v. Hinkley, 6 Greenl. (Me.), 289. (8) The contention of defendants' counsel in the trial court was that the sheriff sold only the equity of redemption of J. B. Kelsey in the land, and the trial court so held. The sheriff acted under the statute and, in virtue of the judgment of the court and the law under which he acted, conveyed all of the interest of J. B. Kelsey in said real estate. Stanton v. Boschert, 104 Mo. 393; R. S. 1889, sec. 543.

SILVER & BROWN and B. R. RICHARDSON for respondents.

(1) The perfected attachment liens under which appellant claims title do not antedate the title under the deed of trust. (a) The first attachment abstract was filed at 2 o'clock in the afternoon of August 25th, 1882, and the evidence all tends to show that the deed of trust was received by Nixon at Oswego, N. Y., on August 23rd, and on that day delivered to Dr. Charles T. Kelsey and accepted by him. (b) That an attachment lien is not completed or perfected until the filing

of the abstract of attachment in the recorder's office is firmly established in this State.   Stanton v. Boschert, 104 Mo. 393; Bryant v. Duffy, 128 Mo. 18.  (2) Plaintiff's ground for relief founded on the alleged priority of the attachment over the title under the deed of trust was set up for the first time in his amended petition filed more than ten years after the deed of trust was placed of record.   He is, therefore, seeking relief on a new title or cause of action, and is barred in respect thereto by ten years' statute of limitations pleaded in the answer.   Sims v. Field, 24 Mo. App. 557; Buell v. Ins. Co., 45 Mo. 562; Holmes v. Front, 7 Peters 171.  (a)  The statute of limitations runs against a conveyance made in fraud of the grantor's creditors from the time it is recorded. Liese v. Meyer, 143 Mo. 555; Rogers v. Brown, 61 Mo. 195; Hughes v. Tettrell, 75 Mo. 573; Funkhouser v. Lay, 78 Mo. 466.  (b)  Where the statute so begins to run, no intervening matter, such as infancy, possession or the like, can thereafter interrupt its course.   Cunningham v. Snow, 82 Mo. 587. (3)   A sale though made by a vendor with fraudulent intent, is not invalid, unless the vendee had actual notice and knowledge of such intent; the knowledge of facts which, if investigated and followed, would lead to knowledge of the fraud, is insufficient. State to use v. Mason, 112 Mo. 374.  (a) The case before the court is one of conditional sale, i. e. the deed of trust in question is a conditional sale, J. B. Kelsey not having been a previous creditor of C. T. Kelsey.   A fraudulent intent to render a sale of property void as to creditors must exist at the time of the sale, and the vendee must have knowledge thereof.   Hill v. Taylor, 125 Mo. 331; Sexton v. Anderson, 88 Mo. 379.  (b)  Fraud is never presumed, but must be proved; while it may be inferred from facts and circumstances, the burden rests upon the party asserting it to make it manifest.   Hardcastle v. Hamilton, 121 Mo. 465; Priest v. Wray, 87 Mo. 16; Funkhouser v. Lay, 78 Mo. 458; Hausman v. Hope, 20 Mo. App. 193.  (4)  Where an exe-

cution creditor sells the equity of redemption in land, such creditor is estopped to assail the mortgage or deed of trust on the land as being in fraud of creditors, and the purchaser at the execution sale occupies no better position than the execution creditor. Knoop v. Kelsey, 102 Mo. 291; s. c., 121 Mo. 642; Craig v. Zimmerman, 87 Mo. 479; Messmore v. Haggard, 46 Mich. 559; Freeland v. Freeland, 102 Mass. 478; Flanders v. Jones, 30 N. H. 154; Brown v. Snell, 46 Me. 490; Lord v. Sill, 23 Conn. 324. The sheriff's notice of sale, his deed which recites that he conveyed all the interest of J. B. Kelsey that "I might sell as sheriff as aforesaid by virtue of the aforesaid judgment, execution and notice," and all the facts and circumstances attending the sale and in evidence, conclusively show that appellant only bought the equity of redemption in the premises sold. 2 Freeman on Exec. (2 Ed.), sec. 339; Knoop v. Kelsey, 102 Mo. 298; s. c., 121 Mo. 642. (5) The findings of the trial court on the issues of fact were in favor of the defendants, and we submit that under the decisions of this court they should not be disturbed. It is uniform rule for this court to defer much to the finding of facts made by the chancellor. It held in a recent case that it would not disturb the findings of the lower court unless satisfied it was against the preponderance of the evidence. Bank v. Newkirk, 144 Mo. 473; Short v. Taylor, 137 Mo. 518; Rawlins v. Rawlins, 102 Mo. 563; Snell v. Harrison, 83 Mo. 651; Lallement v. Poupeny, 12 Mo. App. 580.

ROBINSON, J.—This is a suit in equity begun in the Morgan Circuit Court in April, 1892, to set aside a fraudulent deed of trust on certain land in Morgan county, executed by J. B. Kelsey to Charles D. Nixon in trust to secure the payment of a promissory note of $3,000 payable to Charles T. Kelsey, and praying that plaintiff's title be adjudged paramount to that conveyed by the deed of trust.

The cause was tried at the June term, 1896, of the Saline

Circuit Court, where it had been taken on change of venue, and resulted in a dismissal of plaintiff's bill, to reverse which plaintiff has brought the case to this court by appeal.

The amended petition, upon which the case was tried, alleges, in substance, that plaintiff purchased the land embraced in the deed of trust in question at a sale under several executions issued upon judgments in favor of C. H. Knoop and another against J. B. Kelsey, made by the sheriff of Morgan county, Missouri, during the October term, 1883, of the Morgan Circuit Court; that said judgments were rendered in attachment proceedings against the property of J. B. Kelsey begun August 23, 1882; that personal service was made in each of the attachment suits upon said J. B. Kelsey, and said real estate levied upon by the sheriff under the several writs of attachment; that plaintiff's purchase of the land in controversy vested in him all the right, title and interest J. B. Kelsey had therein on August 23, 1882; that said J. B. Kelsey pretended to make a deed of trust thereon to secure a pretended indebtedness of $3,000 to his brother Charles T. Kelsey of Tompkins county, New York, dated July 22, 1882, but that it was not delivered to said Charles T. Kelsey until after the seizure of said land upon writs of attachment in the several suits; that the deed of trust was filed for record in the recorder's office of Morgan county by J. B. Kelsey before any of the attachment writs were levied; that after it was recorded it was re-delivered to J. B. Kelsey and by him controlled until September 1, 1892, when he delivered it to his brother, Charles T. Kelsey, in New York; that the levies of the several writs of attachment became liens upon the said land prior to the delivery of the deed of trust to Nixon and Charles T. Kelsey; that the deed of trust was executed without any consideration whatever, that Charles T. Kelsey is the brother of J. B. Kelsey and Nixon is a cousin of both J. B. and Charles T. Kelsey, with whom he sustained confidential relations; that the note and deed of trust were fraudulent transactions as

against the creditors of J. B. Kelsey, and part of a scheme to defraud the creditors of the latter, who, it is alleged, at the date thereof, was largely indebted and in failing circumstances, and that the making of said deed of trust was in furtherance of such scheme; that as the deed of trust was recorded prior in point of time to the levy of the several writs of attachment it cast a cloud upon the plaintiff's title, and was apparently a prior lien; that plaintiff's title was in right and equity of prior date to the deed of trust. The prayer of the petition is that the deed of trust be canceled, set aside and for naught held; and that the same be decreed to have been executed in fraud of the creditors of J. B. Kelsey; and that plaintiff's title be decreed prior and superior to any right or interest conveyed by the deed of trust; and for general relief.

The defendants answered jointly, denying generally the allegations of the petition, and set up and interposed the ten years' statute of limitations as a defense to the ground of action that the deed of trust was not delivered until after the alleged attachment liens accrued, and pleaded the answer of plaintiff filed in the Morgan Circuit Court in the case of C. H. Knoop vs. C. F. Nixon, J. B. Kelsey, Charles T. Kelsey and himself, wherein he then averred and claimed that the land purchased by him was subject to the encumbrance of the deed of trust now in controversy and that he was then ready and willing to pay the same to whom the court should direct, and averred that the plaintiff purchased the land in controversy subject to the deed of trust the validity of which is assailed by plaintiff in this case; that plaintiff purchased only the equity of redemption of J. B. Kelsey in said land; that from the notice of sale and the oral proclamation made by the sheriff thereat the latter sold only the equity of redemption, and that the plaintiff had consequently purchased only that interest, and for more than ten years had claimed no greater interest. The answer further averred that the election of Knoop to sell and of plaintiff to purchase the equity of re-

demption only, and the failure of plaintiff to make any other claim prior to the filing of this amended petition herein, on August 7, 1894, effectually barred the plaintiff from the relief sought.

The reply denied the new matter contained in defendant's answer.

Plaintiff contends that the note and deed of trust in question were fraudulent transactions against the creditors of J. B. Kelsey, and consequently, as purchaser of the mortgaged premises at sheriff's sale, is entitled to have the same set aside and removed as a cloud cast upon his title, and the defendant perpetually enjoined from proceeding thereon. In this connection counsel for plaintiff strenuously urges that in point of fact the deed of trust was not delivered until after the abstract of attachment had been filed by the sheriff with the recorder in at least one of the several attachment suits theretofore commenced against J. B. Kelsey, so that the levy of the writ of attachment and the sheriff's deed on execution sale thereunder were prior in point of time and constituted a prior lien. Defendants, on the other hand, maintain that the deed of trust was not only made in good faith, but actually delivered to the beneficiary before the attachment liens accrued; and, further, that even though the deed of trust was made in fraud of creditors, the plaintiff bought only the equity of redemption of J. B. Kelsey in the land in controversy, and therefore is in no position to assail the deed of trust on the ground of fraud.

The record discloses that in July, 1882, J. B. Kelsey was a banker at Versailles, in this State, deeply involved, with creditors pressing their claims for payment, and, indeed, might fairly be said to be insolvent and in failing circumstances. On July 22d a deed of trust was prepared and signed by J. B. Kelsey, and forwarded to his wife, then in the State of Maryland, for her signature, acknowledgment and return; she acknowledged the deed of trust on August 14th, and returned the same to J. B. Kelsey, who filed the same for

record in the recorder's office of Morgan county on the 21st day of August at 11:30 a. m.

The deed of trust, it is conceded, purports to have been given to secure the payment of a note of $3,000 in favor of his brother Charles T. Kelsey, who resided in the State of New York, with interest thereon at the rate of seven per cent per annum. After the deed of trust in question had been recorded, J. B. Kelsey obtained the same from the recorder and sent it by mail, together with the note and abstract of title, to Nixon, at Oswego, New York, and the latter thereupon took it to the home of Charles T. Kelsey and says that he received the amount of the loan in checks and drafts. No part of the proceeds of this transaction, however, was ever turned over to J. B. Kelsey. Nixon held the checks and drafts received by him from Charles T. Kelsey until about the 5th of September, 1882, when, by direction of J. B. Kelsey, he turned them over to Thomas Kelsey, father of J. B. Kelsey, in payment of an alleged debt of upwards of fifteen years' standing.

On August 23d, several attachment suits were commenced against J. B. Kelsey in the Morgan Circuit Court, his bank closed, and the land embraced in the deed of trust levied upon in each of the several attachment suits. Writs of attachment were levied in each of said suits on the 23d day of August, and abstracts of attachment were filed by the sheriff with the recorder. The evidence shows that the first abstract of attachment was not filed in the recorder's office until August 25th at two o'clock p. m., abstracts in the other cases having been filed later along at different times between the 25th and the 28th day of August.

It is conceded that judgment was duly rendered in each of said suits against J. B. Kelsey and in favor of the respective plaintiffs, and that special executions were issued thereon, the land in question sold and plaintiff became the purchaser at such sale. After his bank was closed and the several attachments were run upon the premises embraced in the deed of

trust, J. B. Kelsey telegraphed the trustee Nixon to pay the money derived from the note and deed of trust over to his (Kelsey's) father at once instead of sending it to him at Versailles, so as to prevent his Missouri creditors from attaching it. Nixon, however, did not turn the checks and drafts over to Thomas Kelsey, until about the 5th of September thereafter.

The record further shows that Charles T. Kelsey assigned the note secured by the deed of trust to his father, so that as a matter of fact he was not out any money whatever on the transaction. Shortly thereafter Thomas Kelsey died, leaving a will, in which Charles T. Kelsey was named as one of the executors. The entire personal estate of Thomas Kelsey was taken by Charles T. Kelsey at a valuation of $6,600, the latter, however, only paying the sum of $3,500 therefor, thereby leaving the face of the J. B. Kelsey note, which had passed into his father's hands during his lifetime, unpaid, notwithstanding it constituted part of the alleged assets of said estate.

The evidence further shows that the deed of trust was not to become operative or taken as delivered until the abstract of title was delivered and the money furnished. As before stated, the deed of trust was filed for record on the 21st day of August, at 11:30 a. m., and we think that a careful reading of this record must impress the practical mind with the fact that it did not leave Versailles until the afternoon of the 22d, and possibly not earlier than the 23d of August. At this time it seems that the mail for the east closed at 1:30 p. m. The better evidence is to the effect that it would have taken the letter transmitting the note and deed of trust forty-eight hours, or thereabouts, to reach Nixon at Oswego, New York. The trustee Nixon, to whom the same was sent, lived about fifty miles from Charles T. Kelsey, and in deliverng the note and deed of trust he was necessarily compelled to travel partly by rail and partly by team, so that the deed of trust could not very well have been delivered before the 26th of August, if

that early.    Charles T. Kelsey, whose deposition, taken in the former appeal, was read in evidence, failed to fix the date of the delivery of the deed of trust.    The memory of the trustee Nixon on this question is likewise very unsatisfactory.    When the latter's deposition was taken in the Knoop case in 1884 or 1885 he was unable to fix the date of delivery with any degree of certainty, but when he came to testify on the trial of this case in 1896 his recollection with respect to this transaction seems to have greatly improved, so that, remarkable as it may seem, he was able to recall much more clearly and distinctly the circumstances of the delivery of the deed than in 1884.

But this growth of facts with the flight of years is not very satisfactory to the court.    By a careful reading of all the testimony we have been forcibly impressed with the fact that the deed of trust made to Nixon to secure the alleged indebtedness of the brother Charles Kelsey and that was afterwards assigned by him to the father of himself and J. B. Kelsey, was but a part of a scheme to hinder and defraud the creditors of J. B. Kelsey in the effort to collect their debts out of the land in suit and the trial court should for that reason have found the issue in favor of plaintiff.    And we are also equally satisfied, wthout further detailing the testimony that has lead us to the conclusion, that the deed of trust was not delivered by Nixon the trustee (to whom it was sent) to Charles Kelsey, until after the levy of the attachment and the filing in the office of the recorder of the first abstract of same on the 25th of August, 1882, and for that reason the right of plaintiff as a purchaser at execution sale under said levy should have been declared prior to any right or interest conveyed or purporting to be conveyed by the deed of trust.

As to the two remaining contentions of defendant (and which judging from the briefs filed herein must have been the controlling question in the mind of the trial court, in the making of its judgment), first, that the sheriff sold and plaintiff bought only the equity of redemption of J. B. Kelsey in the

land in controversy and, second, that he should now be estopped to assail the deed of trust covering the land, on account of his declaration and conduct, and the answer filed by him in the Knoop case recognizing its validity, notwithstanding the court may think and find the deed of trust in fact to have been fraudulent in its inception, we have this to say:

The proof shows that the sale was made in the usual way and that the sheriff sold all the right, title and interest of the execution defendant in the land. The sheriff simply acted under and in conformity to the statute, and in virtue of the judgment of the court, and the law under which he acted conveyed all the interest and estate of the execution defendant in the land sold. If the land in fact was subject to a prior value deed of trust (regardless of the manner of the sale) the purchaser would only have bought the equity of redemption of the original grantor, and execution defendant, while on the other hand if the sale had been made subject to the so-called deed of trust in express terms and the same should afterwards be discovered fraudulent, and without regard to what the execution purchaser thought of it, at the time of the sale, or what he afterwards said or offered to do, by the answer in the suit of Knoop v. the Kelseys, Nixon and himself in 1892, when Knoop attempted to have the sale set aside, it could and did not affect the interest purchased by him, and he can not now be estopped by what was done or said from setting up the fraudulent origin and character of the deed of trust by those who have lost nothing by his belief, declaration or answer filed.

Even though the execution creditors had no notice of the invalidity of the deed of trust placed upon the land by J. B. Kelsey, and the plaintiff as execution purchaser may at the time of the sale and for a long time afterwards have entertained the belief that the deed of trust was valid, that certainly ought not to preclude him now from testing its validity with the maker, or those claiming under the deed, when its fictitious and spurious character have been brought to light. If the

deed of trust is void (and as such we have declared it) the plaintiff as purchaser at execution sale is now the owner of all the interest of J. B. Kelsey in the land therein described, and he has the right by proper proceeding to have the fraudulent deed of trust canceled and removed as a cloud cast upon his title, or his interest in the property declared prior and paramount thereto.

By section 543, R. S. of 1889, the sheriff is required to declare in his return that "he has attached all the right, title and interest of the defendant," etc. In conformity with the statute, the sheriff, as shown by the record, recited that he had attached all the right, title and interest of J. B. Kelsey in the land in question, and, by an appropriate clause in the sheriff's deed, all the right, title, interest of J. B. Kelsey in the real estate was transferred and conveyed to the plaintiff.

There is nothing whatever in this record showing that the sheriff's sale and deed thereunder did actually include only the equity of redemption.

Plaintiff's rights are not in any wise abridged or affected by the statement contained in the sheriff's notice of sale to the effect that the same was made "subject to all prior liens and judgments." All J. B. Kelsey's right, title and interest in the premises was sold by the sheriff under executions issued in the judgments rendered in the several attachment suits, and it is not conceived how that recital affects the case. Clearly the sheriff could not limit the interest so sold by any statement of his. We are utterly unable to find anything in the circumstances of this sale tending to show that the plaintiff acquired simply an equity of redemption. The sheriff sold the interest of J. B. Kelsey in the land. The law says what that interest shall be and is.

Upon the filing of the abstract of the several attachments in the recorder's office the attachment liens took effect.

As we have seen, judgments were duly rendered in the several attachment suits and sales were made at the same time

on executions thereunder.　The sheriff's deed, under which plaintiff claims, relates back to the time of the filing of the first abstract of attachment, which, as before stated, was filed by the sheriff in the recorder's office on the 25th day of August, at two o'clock p. m.

The deed of trust in question having been made in fraud of creditors the defendants as the active participators in the scheme to defraud the creditors of J. B. Kelsey of their rights can not be heard to complain.

From what has been said, it will be seen that the sheriff sold and conveyed to plaintiff all the right, title and interest that J. B. Kelsey had in the land in question at the time the first abstract attachment was filed in the recorder's office, which, as already seen, was prior in point of time to the delivery of the fraudulent deed of trust.　It therefore follows that the decree in this case should be reversed and the cause remanded to the circuit court with directions to cancel and annul the Nixon deed of trust, and decreeing the title acquired by plaintiff under the sheriff's deed in question paramount to any right acquired by defendants under the fraudulent deed of trust.　It is so ordered.　All concur.