## ANHEUSER-BUSCH BREWING ASSOCIATION, Respondent, v. PARK NOVELTY COMPANY, Defendant; RULE et al., Appellants.

### St. Louis Court of Appeals, October 30, 1906.

1. **CORPORATIONS: Capital Stock: Stockholders' Liability for Corporation Debt.** After an execution against a corporation was returned *nulla bona*, a motion for execution against certain stockholders was filed alleging that only a portion of the par value of their stock was paid up. The evidence showed the entire capital stock was paid up by a lease determinable upon three days' notice and there was expert testimony to the effect that it was valueless, though contradicted by other testimony. *Held*, the evidence was sufficient to support a finding by the trial court that the capital stock was not full paid and that the stockholders against whom the execution was moved were liable.

2. ————: ————: ————: **Innocent Purchaser of Stock.** In such a proceeding where the defendant stockholders claimed to be purchasers for full value of the stock without notice that it was not full paid, the evidence is examined and held sufficient to support a finding that they were not purchasers without notice.

120 App.—33

Appeal from St. Louis City Circuit Court.—*Hon. Wm. M. Kinsey*, Judge.

AFFIRMED.

*Stearn & Haberman* for appellants.

(1) It devolves on plaintiff creditor to establish affirmatively that the capital stock of the Park Novelty Company was not in fact full paid. The stock on its face purporting to be full paid, there is no obligation on defendant stockholders to show that it was so full paid. The burden rests on the party alleging it to be not full paid. Bruce v. Driggs, 25 How. Prac. 71; Chase v. Lord, 77 New York 1, 6 Abb. N. C. 258; Wellington v. Const. & Imp. Co., 52 Hun 408, 5 N. Y. Supp. 587; Taylor v. Mining Co., 86 Mass. (4 Allen) 577; Bridge Co. v. McCluney, 8 Mo. App. 501; Thompson on Stockholders, sec. 135. (2) It is true the evidence was somewhat conflicting as to the knowledge on the part of Kilgen and Rule of the actual assets of the company. Supporting the view of Kilgen and Rule are the facts that the stock of the company was actually issued to the incorporators named in the articles and afterwards turned in and new certificates issued to Kilgen and Rule. Kilgen and Rule being subsequent transferees without notice are not liable in this action. Johnson v. Lullman, 15 Mo. App. 55, 88 Mo. 567; Erskine v. Loewenstein, 82 Mo. 301; Berry v. Rood, 168 Mo. 332.

*Nagel & Kirby, Truman P. Young* and *Curtis Haydon* for respondent.

Stockholders are liable for the unpaid balance due upon their stock, even though they act in good faith and though there be no fraudulent overvaluation of the property or services given therefor. The mere fact that one is the owner of stock which has not been fully paid for, especially if he has knowledge of such fact, is sufficient

to establish his liability whether he be an original sub-
scriber or a subsequent assignee of such stock; the lia-
bility of the stockholder becomes fixed on a return of
*nulla bona* to the execution. McLeron v. Franciscus,
43 Mo. 425; Chouteau v. Dean, 7 Mo. App. 210; Skrainka
v. Allen, 76 Mo. 384; Kehlor v. Lademan, 11 Mo. App.
550; Erskine v. Lowenstein, 82 Mo. 301; Shickle v.
Watts, 94 Mo. 410; Caquard v. Prendergast, 35 Mo. App.
237; Bank v. Gallaher, 43 Mo. App. 482; Ollesheimer v.
Mfg. Co., 44 Mo. App. 172; Shepard v. Drake, 61 Mo.
App. 134; Nichols v. Stevens, 123 Mo. 96; Bank v.
Bank, 130 Mo. 155; Woolfolk v. January, 131 Mo. 620;
Carp v. Chipley, 73 Mo. App. 22; Van Cleve v. Berkeley,
143 Mo. 109; Stone Cutter Co. v. Scott, 157 Mo. 520;
McLure v. Iron Co., 90 Mo. App. 567; Berry v. Rood,
168 Mo. 316; Shields v. Hobart, 172 Mo. 491.

GOODE, J.—Plaintiff having obtained a judgment
against the Park Novelty Company, a corporation,
caused an execution to issue thereon, which was returned
*nulla bona.* Thereupon plaintiff filed a motion for ex-
ecution against the defendants Kilgen and Rule, stock-
holders of the corporation and each holding twenty-four
shares of stock on which the motion alleged there re-
mained unpaid sixty per cent of the par value. The an-
swer to the motion for execution stated as reasons why the
execution should not issue against the defendants that the
shares of the capital stock of the corporation purported
to be fully paid; that the defendants were not original
holders of any of the shares, but were transferees and
had paid value for all shares held by them without no-
tice or knowledge that they were not fully paid, if, in
fact, they were not. There was a futher averment that
the indebtedness for which the judgment against the
Park Novelty Company was obtained, accrued after no-
tice to the creditor that the Park Novelty Company's
stock was not paid. This allegation is immaterial, there

being no evidence to support it. The answer also put in issue the averment that the stock was not fully paid.

The evidence shows that the Park Novelty Company was incorporated March 24, 1903, with a capital stock of $10,000, stated in the articles to have been actually paid up in lawful money of the United States and to be in the hands of the first board of directors. The original subscribers to the stock did not include the defendants, but they were among the promoters of the corporation and expected that some of its shares would be issued to them. There can be no doubt that they knew all about the mode in which the capital stock was paid. The payment was principally by a lease on several tracts of ground thirty feet deep and from fifteen to seventeen hundred feet long, in the vicinity of the site of the Louisiana Purchase Exposition. The title to this ground appears to have been in the Connecting Railroad Company, a corporation, but the Parkview Realty Company, another corporation, had some control over it. In fact, those two corporations and the Park Novelty Company seem to have had some common stockholders and to have been affiliated more or less. Kilgen and Rule were interested in them. The Park Novelty Company was organized in order that it might take this lease and use it for refreshment booths for the sale of cigars, drinks, confectionery and lunches during the period of the Exposition. All but about eight hundred dollars of the capital stock of the Park Novelty Company was paid by lease. The remainder of the capital stock was contributed by the promoters, including Kilgen and Rule, who gave checks for several hundred dollars, but stated that they regarded these checks as loans to be repaid them. What cash was paid was intended to be used to buy the furniture and other articles needed to enable the company to carry on its business. The lease of the ground was only for the joint wills of the lessor and lessee. The Park Novelty Company was to keep a true account of the

gross receipts of all businesses conducted by it and pay twenty-five per cent of those receipts to the Connecting Railroad Company as rent. The lease contained this clause:

"And it is hereby expressly agreed that the tenancy hereby granted is merely one at will or by sufferance, and may be terminated at any time by either of the parties hereto or by the successors or assigns of the aforesaid agent of the party of the first part, by mailing a notice to that effect to the other party, naming the time for such termination to take effect, addressed to the place of business last known to the one giving such notice, or posting such notice at any place on any part of the above-described premises; such notice to be mailed or posted at least three days before the time fixed for such termination in said notice. It is hereby especially agreed that all other notices to quit from or to the party of the second part, are hereby dispensed with."

A real estate agent of the city of St. Louis with thirty years' experience, said he was familiar with the value of property and leases around the Exposition grounds, having dealt in them to some extent, and heard their values discussed. He testified that the lease in question, terminable as it was in three days, was not worth anything. For the defense another real estate agent testified that it was worth from twelve to fifteen thousand dollars, because it would take sixty days to put a lessee out by legal proceedings. This testimony presupposed that the lessee would refuse to get out on three days' notice, thereby violating its obligation.

The question for decision in this connection is whether there is evidence to support the finding of the trial court that the capital stock of the Park Novelty Novelty Company was not fully paid. The expert testimony was merely advisory and was contradictory. We can not say the lease of the ground on the terms stated, so palpably paid for the stock that the trial court had no

reason to conclude it remained unpaid in part. Neither is it material that the subscribers and promoters acted in good faith and did not intend to perpetuate a fraud on the creditor of the company. [Van Cleve v. Berkey, 143 Mo. 109, 44 S. W. 743; McCluer v. Iron Co., 90 Mo. App. 567.]

But it is said that Kilgen and Rule were innocent purchasers of the stock without notice that it was unpaid, if such was the case. This proposition depends on an issue of fact, for certainly we would not be entitled to hold that the evidence conclusively shows they purchased the stock in ignorance of the fact that it was unpaid. What the evidence shows is that the shares held by Kilgen and Rule were issued to them in consideration of their exerting their influence to induce the Parkview Realty Company and the Connecting Railroad Company to make the lease in controversy to the Park Novelty Company. But this transaction was in contemplation from the first as the mode in which the capital stock of the Novelty Company should be paid. To our minds the evidence is conclusive that Kilgen and Rule were perfectly aware of all the circumstances when they acquired their shares and were as much parties to leaving the stock partly unpaid, as any of the subscribers. However, all we need to decide is that the evidence would support the finding of the court below that they were not purchasers without notice. We are not called on to determine whether their defense of want of notice would be good if the evidence conclusively supported it. What we hold is that the court's finding that they were not such purchasers cannot be reversed. There were no declarations of law asked and we must presume the court found the fact against them.

The judgment is affirmed. All concur.