JOSEPH SCHNEIDER, Appellant, v. CHARLES T. JOHNSON et al., Respondents.

Springfield Court of Appeals, December 4, 1911.   Motion for Rehearing Overruled February 26, 1912.

1. INJUNCTION: Adequate Remedy at Law: Replevin: Corporations: Unpaid Stock Subscriptions. Plaintiff purchased at an execution sale, property belonging to a corporation, under a judgment, which plaintiff had obtained against the corporation; but defendant bank held a note against the corporation, which was secured by deed of trust on the property purchased by plaintiff. Plaintiff instituted this action in equity and claimed that defendants interfered with his right to said property and were about to sell the same under the deed of trust, and alleged and proved that the payee in the note was indebted to the corporation in excess of the amount of the note for unpaid subscription on stock in the corporation, and that the bank had the note for collection only. Held, that plaintiff's bill in equity to enjoin the defendants from interfering with said property would not lie for it appeared that he had an adequate remedy at law by an action in replevin; in which action his title could be maintained under the facts in evidence.

2. BANKS AND BANKING: Notes for Collection: Title Subject to Defenses. Where a note is left with a bank for collection, with instructions that when collected the proceeds are to be applied on the indebtedness of the payee of the note, but the note is not assigned as collateral security for such indebtedness, the bank's title is subject to all the equities and defenses that could have been enforced against the payee.

Schneider v. Johnson et al.

3. **CORPORATIONS: Stock Subscription: Payment in Property: Liability of Stockholder.** Stockholders in a corporation are liable for the difference between the par value of their subscription for stock in such corporation and the value of the property conveyed to the corporation in payment for such stock.

4. ————: ————: **Liability of Stockholder: Liability of Purchaser with Knowledge.** One purchasing corporation stock from a stockholder with knowledge that the owner thereof has not paid the corporation the full value therefor is personally liable to the creditors of the corporation for the amount due on the stock so purchased.

5. **EXECUTION SALES: Mortgages: Tite of Purchaser: Defenses Against Prior Deed of Trust.** The purchaser of property at an execution sale, which property at the time is covered by a deed of trust given by the execution defendant, is entitled to make any defense against the deed of trust that the execution defendant could have made had the execution sale not taken place.

6. **CORPORATION: Stock Subscription: Liability of Stockholder: Where Stockholder is Corporation Creditor: Replevin: Mortgages.** Where a stockholder in a corporation holds a note against the corporation which note is secured by property belonging to the corporation, but the stockholder is also indebted to the corporation in a sum in excess of the note on account of the unpaid purchase price of his stock, he would not be entitled to foreclose the deed of trust on the property and this defense could be made by the corporation in a replevin suit instituted by the trustee in the deed of trust for the purpose of getting possession of the property, so as to foreclose the trust deed.

7. ————: **Duty of Directors: Clams of Directors.** The law requires directors to deal fairly with the corporation and courts of equity subject their transactions with it to most searching scrutiny and places the burden upon them to show that any claim they hold against the corporation is *bona fide*, honest and just.

Appeal from Jasper Circuit Court.—*Hon. D. E. Blair,* Judge.

AFFIRMED.

*Horace Merritt* for appellant.

(1) The holder of negotiable paper as collateral for a pre-existing debt, having given no consideration for it, holds it liable to the equity existing between the

original parties. Napa Valley Wine Co. v. Rinehart, 42 Mo. App. 172; Loewen v. Forsee, 137 Mo. 29; Wright v. Trust Co., 144 Mo. App. 648. (2) The public have a right to assume in dealing with a corporation that its actual capital in money or moneys worth is equal to its capital stock. 1 Cook on Corporations, p. 392, sec. 199. (3) And one of the best and most frequent remedies is by bill in equity. 1 Cook on Corporations, p. 401, sec. 204. (4) It is the right and duty of the receiver of an insolvent corporation to collect the unpaid subscriptions on stock for the purpose of paying the corporate debts in full. 1 Cook on Corporations (5 Ed.), p. 410, sec. 208; Berry v. Rood, 168 Mo. 316. (5) When property is taken in payment of stock of a corporation the stockholder is liable at the suit of a creditor of the company without notice to account for the difference between the true value of the property and the face value of the stock, and this is the Missouri Constitution and statutes even though no actual fraud be shown. Berry v. Rood, 168 Mo. 316; Hequembourg v. Edwards, 155 Mo. 520; Steam Stone Cutter Co. v. Scott, 157 Mo. 525; Rumsey Mfg. Co. v. Kaime, 173 Mo. 560; Meyer v. Mining & Milling Co., 192 Mo. 189; Meyer v. Mining Co., 192 Mo. 162; State ex rel. v. Goodrich, 138 Mo. 283; Powder Co. v. Lead Co., 134 Mo. 182

*McIndoe & Thurman* for respondents.

(1) The bank was *bona fide* holder of the note and mortgage. Where a note is secured by a chattel mortgage and the mortgage is past due and the mortgage is yet in possession, the mortgagor has no interest subject to execution and the legal title and right of possession is in the mortgagee. State ex rel. v. Hunter, 93 Mo. App. 639; State ex rel. v. Althaus, 60 Mo. App. 122. (2) The interest of a mort-

gagor of personal property is subject to execution only when he has a definite and determined right of possession. Possession showing the pleasure of the mortgagee will not be sufficient. Bank v. Abernathy, 32 Mo. App. 211; State ex rel. v. Carroll, 24 Mo. App. 358; Sexton v. Monks, 16 Mo. 156; Spalding v. Taylor, 1 Mo. App. 34; King v. Bailey, 8 Mo. 332; Bank v. Metcalf, 29 Mo. App. 384; Hickman v. Dill, 32 Mo. App. 509; Melman v. Pollock, 37 Mo. App. 235. (3) It is well settled in this state that equity has no jurisdiction to remove a cloud of title upon personal property and the action relates to real estate only and where the title must come of record. State ex rel. v. Wood, 155 Mo. 446; 6 Amer. Ency. of Law (2 Ed.), 150; Lockwood v. St. Louis, 24 Mo. 20; Leslee v. St. Louis, 47 Mo. 474; Clothing Co. v. Steidman, 120 Mo. App. 525.

GRAY, J.—This action in equity was instituted against James McIndoe, Charles T. Johnson, John O. Shofner, James B. Lillie, and the First National Bank of Mt. Vernon, Indiana. The cause was dismissed as to McIndoe, and on hearing plaintiff's bill was dismissed and he has appealed.

The petition alleges that all of the defendants except McIndoe, are non-residents of the state of Missouri; that on or about the 23rd day of December, 1909, plaintiff obtained a judgment in a justice court against the Wautauga Mining Company, a corporation, for the sum of $76.84; that on the 11th day of February, 1910, an execution was issued on said judgment, and was by the constable, duly levied upon all the property of the Wautauga Mining Company, consisting of a certain mining plant; that under said execution, the constable subsequently sold said property and the plaintiff purchased the same for $201, and which sum the plaintiff then and there paid to the constable, and thereupon, the constable delivered

Schneider v. Johnson et al.

the possession of said property to the plaintiff; that notwithstanding said sale and the delivery of the possession, the defendants by their agents and servants have trespassed upon said property, and have harassed and annoyed the plaintiff in his possession thereof, and are still trespassing on the same, claiming to hold possession thereof; that the said First National Bank is claiming the property by virtue of a trust deed executed on the 24th day of April, 1909, by the Wautauga Mining Company to the defendant, McIndoe, in trust for the defendants, Johnson, Shofner and Lillie, which said deed of trust covers the same property sold at constable's sale, and purchased by plaintiff as aforesaid; that said deed of trust was executed by the corporation to secure the corporation's note for the sum of $2000, payable on or before six months after date, with eight per cent interest.

The petition further alleges that before the execution of said note and deed of trust, the defendants, Johnson, Shofner and Lillie entered into an arrangement with one Gardner, whereby it was agreed that they, with the said Gardner and others, would incorporate a company to be known as the Wautauga Mining Company, and that about $70,000 of the corporate stock would be subscribed for by said Gardner, and the remainder would be taken in nominal amounts by the said defendants, with the understanding that said defendants would pay the said Gardner the sum of $15,000 whereupon the said Gardner would transfer a certain mill and mining lease to the corporation, and would also transfer all of said $70,000 of stock in said corporation to the said Johnson, Shofner and Lillie; that the said defendants never paid to Gardner the sum of $15,000, but paid him only a small part thereof, but that the said Gardner delivered the said property to the said corporation, and the said defendants took the said corporation stock, well knowing that the subscription therefor by the said Gardner

had not been paid, and with knowledge that more than $25,000 was then due and unpaid on said stock; that the same is still due and unpaid, and that the said bank, well knowing that said defendants had not paid for said stock, loaned the sum of $2000, taking as collateral security as payment for the same the said $2000 note of said mining company; that Johnson, Shofner and Lillie are solvent and good for the amount of said note, but that said bank, without demanding or collecting the same from them, and in furtherance of the illegal and fraudulent scheme to defraud the plaintiff and other creditors of said mining company, and to aid and assist the said defendants in escaping their just liability on their said stock subscriptions, is now claiming to be an innocent holder of said note and through the defendant, McIndoe, is threatening to sell said property for the purpose of satisfying said note.

Plaintiff further alleges that as the purchaser at said execution sale, he is entitled to all the title and interest of the mining company in said property, but the said McIndoe is now advertising the same for foreclosure, and unless restrained will proceed to sell the same on the 9th day of April, 1910, and will thereby do an irreparable injury to the rights of plaintiff and multitudinous suits will result therefrom; that plaintiff has no adequate remedy at law, and prays for an injunction restraining the trustee and all the defendants from selling the property, or from in any way interfering with plaintiff's right therein, and for an accounting, and that the defendants be charged with the amount due and unpaid on the said capital stock, and the same be offset against the note held by said bank, and thereupon said note be declared paid, satisfied, and said deed of trust cancelled of record.

After filing the plea to the jurisdiction, which was overruled, the defendants Shofner, Lillie and Johnson filed an answer which was a general denial. The bank

filed an answer alleging the execution of the note and mortgage, and that it purchased the same in good faith for value before maturity, and that the same had not been paid, and admitted that it was the intention of the bank to have the trustee sell the property according to the terms of said deed of trust.

The evidence discloses that the Wautauga Mining Company was organized with a capital stock of $80,000, divided into 800 shares of the par value of $100 each, and the same purported to be paid in full. Gardner subscribed for 794 shares of the stock, and each of the other subscribers one share. At the time the corporation was organized, a contract was entered into between Gardner, Johnson, Shofner, Lillie and one Kline, which stated that the 794 shares of stock subscribed for by Gardner were to be paid by the transfer of a mining lease and mining plant; that Gardner had sold to said parties 100 shares of said stock, and in consideration therefor, the parties were to pay to Gardner the sum of $1000 for his individual use, and to deposit an additional sum of $4000 in the treasury of the company to be used for the erection of a mill, and in case the amount so deposited was not sufficient, then Gardner was to transfer an additional twenty shares which were to be sold for fifty cents on the dollar, and the proceeds thereof turned into the treasury of the company to meet the necessary running expenses and operation of the mine.

In addition thereto, Gardner gave the defendants the exclusive right to buy his remaining 674 shares of stock, with the right to sell the same at fifty cents on the dollar, and when sold, the second parties were to retain twenty per cent of the proceeds, and the remaining eighty per cent were to be paid to Gardner until he had received $14,000. In other words, this agreement provided that while Gardner subscribed for $79,400 of the capital stock of the corporation and transferred a certain lease therefor, that he was to

have but $15,000 for the lease, and it thus appears that the lease was not put into the corporation for $79,400, and that the same was taken by the parties as of that value, but they all knew and understood that the lease was only of the value of $15,000, and they agreed that the corporation should have it for this sum.

The evidence further discloses that the bank did not purcase the note and neither was the same assigned to it as collateral security for any indebtedness of Johnson or any of the other defendants but it was left with the bank for collection, with instructions that when collected the proceeds were to be applied on the indebtedness of Johnson to the bank. The bank's title was subject to all equities and defenses that could have been enforced against the payee. [Saulsbury v. Corwin, 40 Mo. App. 373.]

In the organization of the corporation, Gardner, Johnson, Kline, Shofner and Lillie were guilty of fraud. They organized it with $80,000 capital stock and represented that it was fully paid up and in the custody of the board of directors. The evidence discloses that putting the property in at the value they all placed upon it, but $15,000 of the capital stock was paid in property, and this represented $79,400 of the capital stock, and for the balance of $600 of the capital stock, but $300 was actually paid, so that there was no pretense of paying anything for $64,700 of the capital stock. In such cases the stockholders are liable for the difference between the par value of their stock and the value of the property conveyed in lieu of money. [First National Bank v. Rockefeller, 195 Mo. 15, 93 S. W. 761; Bank v. Northup, 82 Kan. 638, 109 Pac. 672; Meyer v. Mining & Milling Co., 192 Mo. 162, 90 S. W. 821.]

It is true Gardner subscribed for the $79,400, but the defendants knew that he had not paid therefor, and hence, were personally liable to the creditors for the amount due on the stock they purchased. [Meyer

v. Mining & Milling Co., supra; Anheuser, etc. v. Novelty Co., 120 Mo. App. 513, 97 S. W. 209; Moore v. U. S. Barrel Co., 87 N. E. 536.]

The evidence discloses that the payees in the $2000 note executed by the corporation were at the time' this suit was instituted, indebted to the corporation on unpaid subscriptions to stock in a sum in excess of the amount due on the note, and the real question is whether plaintiff is entitled to maintain this action in equity for an accounting with such stockholders and have the amount due on the note applied on the indebtedness of the stockholders to the corporation.

The respondents claim that even in equity, he is not entitled to such right, and that he has an adequate remedy at law.

In determining these questions, it must not be overlooked that plaintiff is not proceeding with an unsatisfied execution against the defendants as stockholders of the corporation. He had an execution and it was not returned *nulla bona,* but was levied on the property of the corporation, and from a sale thereunder, enough was obtained to satisfy the same.

While the appellant attempted to prove that after the sale by the constable, he took possession of the property, and retained the same, yet the evidence shows that the representative of the deed of trust trustee was also present at the sale and placed a watchman in charge of the property and kept him there, and when appellant afterwards attempted to remove a part thereof, he was required to replace it, and in fact, the preponderance of the evidence shows that at the time this suit was commenced, the plaintiff was not in possession of the property, and that the same was in the possession of the trustee in the deed of trust, and he was proceeding to sell the same under the terms thereof. This being true, it seems to us that the appellant, at the time he instituted this suit

in equity, had a speedy, adequate and complete remedy at law by an action of replevin. As the purchaser of the right, title and interest of the mining company's interest in the property at the execution sale, he was entitled to make any defense against the deed of trust that the mining company could have made had the execution sale not taken place. [Foster v. Potter, 37 Mo. 525; Huffman v. Nixon, 152 Mo. 303, 53 S. W. 1078; Jones on Chattel Mortgages, sec. 706.]

If the mining company's interest in the property had not been sold, and that company had retained the possession of the property and refused to deliver it to the trustee for foreclosure, and thereupon the latter had instituted his suit in replevin for the possession thereof, it is quite clear that the company, in defense of that suit, would have had the legal right to show that Johnson, the real owner of the note, was indebted to the company in a sum in excess thereof. [McCormick Harvesting Co. v. Hill, 104 Mo. App. 544, 79 S. W. 745.]

It is perfectly clear if Johnson had instituted a suit against the corporation on the note, the corporation could have shown that he was indebted to it at the time the note was executed, in a sum in excess of the amount of the note, and could have had affirmative relief and a judgment against Johnson for the sum he owed in excess of the note.

Johnson was president of the corporation and a member of its board of directors at the time the mortgage was executed, and therefore, sustained a trust relation to the corporation, and he and his brother directors had no right to take a note bearing eight per cent interest secured by a mortgage on all the assets of the corporation, when at the same time they were indebted to the corporation in a sum then due in excess of the amount of the mortgage debt. The law requires directors to deal fairly with the corporation, and courts of equity subject their transac-

tions with it to most searching scrutiny, and places the burden upon them to show that they held *bona fide*, honest and just claims against the corporation. [Shields v. Hobart, 172 Mo. 1. c. 520, 72 S. W. 669.]

If Johnson was indebted to the corporation in a sum in excess of the note, then as an officer of the corporation, it was his duty to credit his note with the amount he owed the corporation, and not to proceed to sell all the tangible assets of the corporation, when in equity and good conscience, the corporation was not indebted to him, but on the other hand, he was indebted to it.

Under the liberal practice in this state in replevin · suits, the corporation would have been permitted to resist his action for possession by showing that he owed it a sum in excess of the deed of trust note, and there is no reason why the plaintiff, as the owner of the property through purchase from the corporation, should not be permitted to make the same defense. [McCormick Harvesting Co. v. Hill, supra; Boutell v. Warne, 62 Mo. 350; Baldridge v. Dawson, 39 Mo. App. 527; Gregory v. Tavenner, 38 Mo. App. 627; Peters v. Lowenstein, 44 Mo. App. 406; Burt v. Mears, 41 Mo. App. 231; Close v. Hurst, 131 S. W. 751.]

In Boutell v. Warne, supra, the court said: "Our statute was intended to make a complete and satisfactory adjusment of all the rights of the parties in this action. Our practice contemplates, that all matters between parties shall be finally determined in one suit where they grow out of the same transaction." And in Jones on Chattel Mortgages, sec. 706, it is said: "Under the system in states admitting equitable defenses in suits at law, a mortgagor of personal property, or any one standing in his place, can, when sued for the mortgaged property, claim the right to redeem; and where he has not been foreclosed, he may

mitigate the recovery against himself by reducing the judgment to the amount actually due on the mortgage.''

The judgment will be affirmed. All concur.