**INGRAHAM v. ENGLAND et ux.    (No. 8932.)**

(Court of Civil Appeals of Texas. Dallas.
Jan. 19, 1924.)

1. **Parties** ⬯48—**Court held empowered in action to cancel note, to pass on its validity as to pledgee who intervened to foreclose pledgee's lien.**

In owner's action against contractor to cancel mechanic's lien contract and notes on the ground of fraud, in which a materialman to whom contractor had transferred a note as collateral to secure payment of indebtedness for material intervened, and asked for a foreclosure of its pledgee's lien on such note, it was proper for the court to pass on intervener's ultimate right to recover on the note as an innocent purchaser for value and his right to foreclose the mechanic's lien contract executed to secure payment thereof.

2. **Appeal and error** ⬯837(7)—**Scope of inquiry as to facts where case submitted to jury on special issues stated.**

Where a case was submitted to jury on special issues, the Court of Civil Appeals is limited, as to the facts, to the answers of the jury and to the additional findings made by the trial court.

3. **Appeal and error** ⬯930(3)—**Facts showing pledgee not holder in due course assumed in support of judgment canceling notes.**

In action involving validity of notes as to payee's pledgee, in which there was no answer by jury to special issues or additional finding by court with reference to whether the notes were payable to order or were acquired by indorsement, it will be assumed on appeal, in support of judgment canceling the notes because procured by fraud on part of payee, that notes were payable to order, and that the transfer to pledgee was without indorsement, and that pledgee was therefore not a holder in due course under Complete Tex. St. 1920, art. 6001a49) Vernon's Ann. Civ. St. Supp. 1922, art. 6001—49); such facts not being inconsistent with the record.

4. **Bills and notes** ⬯330—**Pledge of notes payable to order, without indorsement, held not "holder in due course."**

Fraud of payee in procuring notes payable to order *held* to invalidate notes as against payee's pledge, who took notes without indorsement; such pledgee not being a "holder in due course" under Complete Tex. St. 1920, art. 6001a49 (Vernon's Ann. Civ. St. Supp. 1922, art. 6001—49).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Holder in Due Course.]

5. **Mechanics' liens** ⬯204—**Where contractor abandoned work, pledgee of notes given by him held not entitled to foreclose mechanic's lien contract.**

Materialman to whom contractor transferred owner's notes, secured by mechanic's lien contract, as security for payment of price of material, could not foreclose the contract, even if a holder in due course, where the land constituted owner's homestead, and the contractor abandoned the work of construction on the day when the notes were pledged.

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Action by W. H. England and wife against Elmer C. Ingraham, in which the Oak Cliff Planing Mill & Manufacturing Company intervened. Judgment for plaintiff, and intervener appeals. Affirmed.

W. H. Graham, of Dallas, for appellant.
Brown & Renfro, of Dallas, for appellee.

VAUGHAN, J. This case is improperly styled in this court. Ingraham did not appeal. The intervener, Oak Cliff Planing Mill & Manufacturing Company, alone appealed. The style of the case in the trial court was "W. H. England and wife v. Elmer C. Ingraham. Appellant, intervener in the court below, appeals from the judgment, so that the style of the case in this court should be Oak Cliff Planing Mill & Manufacturing Company, Appellant, v. W. H. England et ux., Appellees. Errors of this character are not infrequent, and are due to clerks of trial courts failing to properly style cases in preparing them for appeal. Owing to the confusion such errors produce on the records of this court, we are compelled to admonish clerks of trial courts to exercise greater care in the future in styling cases appealed so proper parties appellant and appellee will be shown. The case will be discussed as if styled Oak Cliff Planing Mill & Manufacturing Company, Appellant, v. W. H. England et ux., Appellees.

Appellees instituted this suit against Elmer C. Ingraham in the court below on the 16th day of October, 1920, applying for and obtaining a writ of injunction in said cause, which was issued and served upon Ingraham October 22, 1920, restraining him from going on or about the premises involved in this suit, and further enjoined him from working on the house in question, restraining him from meddling or interfering with appellees and such other contractors as they should find necessary to complete the improvements which Ingraham had contracted with them to construct on the premises in question.

The original petition is not in the record.

Appellees, on the 4th day of December, 1920, filed their amended petition against said Ingraham, alleging, in effect, that on September 6, 1920, appellees and said Ingraham agreed in detail on the terms of a certain mechanic's lien contract, whereby said Ingraham agreed and obligated himself to furnish all material and labor, and to erect for appellees a certain five-room cottage according to plans and specifications agreed upon by said parties; said improvements to be erected on lot 18 in block 7 of Vickery place, an

addition to the city of Dallas, Tex.; that Ingraham was to be paid for the erection of said cottage a total consideration of $5,200, as follows: $800 on Friday of the first week after a week of actual work of construction had been done; one note for $3,500 secured by first lien on said property, and one note for $900 secured by a third lien on said property, each bearing interest at 8 per cent. per annum, and providing for the usual 10 per cent. attorney's fees, and each maturing 60 days after date; that under the terms of said contract Ingraham agreed to build and complete said cottage in a good and workmanlike manner within 60 days, and to execute and deliver to appellees a valid and suitable contractor's bond to insure them in the completion of said cottage by said Ingraham according to said plans and specifications; that said Ingraham wholly failed to draw said mechanic's lien contract according to the terms and details agreed upon as a part of said contract; that he drew one copy of said contract as agreed upon, and submitted the same to appellees, who accepted it and expressed their willingness to execute and deliver it to Ingraham as their true and correct contract; that the copy of said mechanic's lien contract so exhibited to appellees provided that Ingraham should furnish suitable contractor's bond to insure the completion of said cottage and the performance of said contract by the said Ingraham in good faith; that appellees presented to said Ingraham a suitable contractor's bond as provided by the terms of the proposed contract referred to to be executed by him in accordance therewith; that he was unable to obtain sureties on said bond and wholly made default in the execution of same; that the execution and delivery of said notes and mechanic's lien contract was fraudulently obtained from appellees by Ingraham; that said notes are without consideration, and that, by reason of the fraud perpetrated by said Ingraham upon appellees in securing the execution and delivery of said instruments, same are void, of no effect, and should be in all things canceled. Appellees prayed for the cancellation of said mechanic's lien contract and notes.

The defendant Ingraham filed an amended answer on September 26, 1921, which, in substance, denied the allegations of appellees, and alleged that appellees did execute a mechanic's lien contract in his favor on September 3, 1920, which was acknowledged September 6, 1920, and also executed a $3,500 note as a first lien on said property and a $900 note as a third lien on said property, both maturing 60 days after date, and denying the allegations of fraud, or that he ever contracted to furnish a bond, although admitting that he was willing to furnish a personal bond, and did furnish one, which was not approved by appellees, and that he could not furnish a surety bond, which was well known

to appellees; that he proceeded to the erection of said building and completed it to the extent of 30 per cent. or to the extent of about $1,700, and that appellees never paid him over $100, and breached their contract with him; that he never abandoned said work, but that appellees obtained an injunction against him, forcing him to suspend said work.

In this state of the pleadings, appellant, on July 8, 1921, filed its original plea of intervention, alleging substantially that on September 3, 1920, appellees entered into a contract with Ingraham to construct a house upon lot No. 18 in block No. 7 of Vickery place, an addition to the city of Dallas, in Dallas county, Tex., for which said appellees agreed to pay the said Ingraham the sum of $5,200; that thereafter, between September 3 and October 27, 1920, at the special instance and request of Ingraham, appellant sold and delivered to said Ingraham certain building material (an itemized list of which is set forth in appellant's pleadings), for which said Ingraham agreed to pay appellant the sum of $990.50, and, the same not having been paid, notice in writing was given by appellant to appellees on or about the 1st of November, 1920, that such material had been furnished at a time when appellees were indebted to said Ingraham in a sum in excess of the amount appellant sues for; that in the month of November, 1920, appellant filed a mechanic's lien in the office of the county clerk of Dallas county, Tex., on said property, appellant further alleging that all of said material actually went into the construction of said building; that at the time of the execution of the contract of September 3, 1920, between appellees and Ingraham, appellees executed the two notes above described, which were a part of the consideration to be paid by appellees to Ingraham for the construction of said building, and that, after the execution of said notes, and before their maturity, said Ingraham indorsed in blank and transferred and delivered to intervener said $3,500 note as collateral security for the payment of the $990.50 debt, and that appellant now holds same as collateral security.

On April 13, 1922, the date of the trial of this cause in the court below, appellant, as intervener, filed his trial amendment, setting up, in substance, that it had furnished Ingraham certain material aggregating $2,038 for the construction of appellees' house, and that Ingraham had pledged the above $3,500 note to appellant as collateral security for the payment of said material, and that appellant acquired the note before maturity for value, without notice of any infirmity in the note or any notice of any difference between appellees and Ingraham, and claimed a valid pledgee's lien on the note as collateral security. It also alleged that a portion of the material sold to Ingra-

ham had actually gone into appellees' house, and, upon the assumption that the property was not a homestead, it alleged giving notice to the owner and filing an affidavit to fix a lien, and sought a foreclosure of the statutory mechanic's lien for the material which went into the house, but did not seek a foreclosure of the mechanic's lien which the owner had given the contractor. Appellant's prayer was, in effect, for a judgment against the contractor, Ingraham, for the full amount of its debt, $2,038, and interest, and for the foreclosure of its pledgee's lien on said $3,500 note, and for judgment against appellees for $990.50, the value of the material which had gone into the building, and for a foreclosure of its statutory mechanic's lien on the property for that amount, which, when collected, should be applied on the judgment against Ingraham, and for general and special relief at law or in equity.

Appellees replied to the above, in substance, as follows: (1) General denial; (2) that no contractor's bond was ever tendered by Ingraham; (3) that all of the statutory provisions with reference to the fixing of a lien on a homestead for improvements were not complied with, in that said bond was not furnished by Ingraham; (4) that the property involved was the homestead of appellees, and had been since its acquisition, and they claimed their homestead exemption; (5) that the $3,500 note was without consideration, and appellant paid no consideration therefor; (6) that said contract was never carried out, and said improvements were never made according to the plans and specifications by either Ingraham or appellant, or any other person for them.

Appellees filed a trial amendment, alleging:

"That the defendant wholly failed to draw up said mechanic's lien contract according to the terms and details agreed upon as part of said contract; that defendant in violation of the contract as pleaded in paragraph 2 of plaintiffs' first amended original petition, and with a purpose of defrauding plaintiffs, caused them to execute in addition to the notes therein described one note for $3,500, due five years from date thereof, and one note for $900, due five years from date thereof; that defendant represented to these plaintiffs that said last two notes were not to be negotiated, but that they were to be held with the contract, and were to be substituted in lieu of and in the place of said $3,500 note and said $900 note due in 60 days; that the defendant, in violation of said agreement, and with the purpose of defrauding these plaintiffs, has either negotiated said notes or hypothecated same in some manner unknown to your plaintiffs, but that in whatever manner same may have been transferred or assigned that it was with an intention to defraud these plaintiffs, and was a fraud on their rights."

The case is before us without a statement of facts accompanying the record.

The following special issues were submitted to the jury, and findings made in reply thereto:

"What sum of money, if any, is the defendant, Ingraham, indebted to the Oak Cliff Planing Mill & Manufacturing Company? Answer: $2,038.

"Did the defendant Elmer C. Ingraham pledge the $3,500 note involved in this suit, with the Oak Cliff Planing Mill & Manufacturing Company, prior to its due date, as collateral security for the payment of the indebtedness which the Oak Cliff Planing Mill & Manufacturing Company now claims that said Ingraham owes it? Answer: Yes.

"At the time the Oak Cliff Planing Mill & Manufacturing Company acquired possession of the $3,500 note involved in this suit, did it know of the controversy, if any, then existing between W. H. England and Elmer C. Ingraham, relative to the contract which they had entered into relating to the building of a house for England by Ingraham? Answer: No.

"At the time the Oak Cliff Planing Mill & Manufacturing Company acquired possession of the $3,500 note involved in this suit, did it have any notice or knowledge of any fraud, if any, which the defendant Ingraham had perpetrated upon W. H. England, relative to the execution of the mechanic's lien contract set up by plaintiff in his pleadings? Answer: No.

"What was the value of the material furnished by the Oak Cliff Planing Mill & Manufacturing Company which actually went into the construction of the house which the defendant Ingraham had contracted to build for England? Answer: $770, seven hundred seventy dollars.

"What was the value of the material which the Oak Cliff Planing Mill & Manufacturing Company manufactured especially for the use in the construction of the house which Ingraham contracted to build for England, but which did not actually go into the construction of said house? Answer: $721, seven hundred twenty-one dollars.

"At the time the Oak Cliff Planing Mill & Manufacturing Company furnished what is called the stock material to Ingraham for use in the construction of England's house, and at the time it manufactured what is called the mill work for use in England's house, did the Oak Cliff Planing Mill & Manufacturing Company have any actual notice or knowledge of the controversies, if any, between England and Ingraham, relative to the contract which they had entered into relating to the construction of said house? Answer: No.

"Did the plaintiffs and the defendant Ingraham make the contract with reference to the construction of the house on Vickery boulevard, as pleaded in plaintiff's petition? Answer: Yes.

"Did the defendant, Ingraham, complete the house according to said plans and specifications? Answer: No.

"On what date did defendant, Ingraham, abandon the construction, if he did abandon it? Answer: September 18, 1920.

"Had the Oak Cliff Planing Mill & Manufacturing Company furnished any material for the construction of the house before said defendant, Ingraham, abandoned the construction? Answer: Yes.

"If you have answered the above question 'Yes,' then what was the value of the material so furnished? Answer: $770, seven hundred seventy dollars.

"Did the Oak Cliff Planing Mill & Manufacturing Company, intervener, ever offer to complete the house in the place of and for the defendant, Ingraham? Answer: No.

"Did the intervener ever give the plaintiff England any notice that any material had been furnished by it prior to the time of filing its intervention? Answer: No.

"Did the plaintiffs England satisfy all claims that they had notice of when· they filed the suit to cancel the contract and notes and remove the cloud from title? Answer: Yes.

"Did the defendant, Ingraham, use fraud in obtaining the execution of the two $3,500 notes and the two $900 notes and the liens securing the same? Answer: .Yes.

"If you have answered the above question 'Yes,' then say whether the intervener could, by the use of ordinary diligence, have ascertained that fraud had been committed against plaintiffs? Answer: Yes.

"Did the intervener use ordinary diligence in ascertaining the character and standing of the $3,500 note and the contract before accepting said notes? Answer: No."

In addition to the findings of the jury, the trial court made the following findings of fact, which findings are not complained of by either party to this appeal:

" * * * That at the time plaintiffs and Ingraham made the contract to build the house for England by 'Ingraham, and at the time the intervener made its contract with Ingraham, the contractor, to furnish the material it did furnish, that the property on which the house was to be built, namely, that described in the mechanic's lien contract, was the homestead of the plaintiffs; that the intervener, Oak Cliff Planing Mill & Manufacturing Company acquired the possession of said $3,500 note not earlier than September 18, 1920, and not later than September 20, 1920; that this suit was originally filed October 16, 1920, by plaintiffs, and that its amended petition was filed December 4, 1920; that the intervener's plea of intervention was filed herein on July 8, 1921, and its amended plea on April 13, 1922; that the defendant Ingraham filed his first amended original answer and cross-action against plaintiff on September 6, 1921."

Based on the above findings, the trial court entered judgment canceling and holding for naught the two notes for $3,500 each and the two notes for $900 each; also canceled and held for naught the mechanic's lien contract executed by appellees to said Ingraham, and the instrument filed by appellant in the office of the county clerk of Dallas county, Tex., on November 8, 1920, recorded in book 50, p. 222, of the mechanic's lien records of said county, by which appellant sought to create a mechanic's lien on the above-described lot; and a personal judgment in favor of appel-

lant against Elmer C. Ingraham for the sum of $2,194.24, and in favor of appellees, that appellant take nothing by its suit against them; and that Elmer C. Ingraham take nothing against appelles on account of his cross-action against them.

Appellant contends that the main and only issues for determination on this appeal are: (1) Was appellant entitled to foreclose its pledgee's or collateral lien on the $3,500 note in controversy in this suit; (2) are the issues pleaded by appellees against Ingraham, defendant in the court below, relevant and material to the rights of appellant as intervener; and (3) if the issues referred to in paragraph 2 above are relevant and material to the rights of appellant, what is the legal effect of the findings of the jury under the pleadings in this case on appellant's right to said $3,500 note?

[1] The suit as instituted by appellees against Ingraham involved not only the validity of the two notes for $3,500 each, the two notes for $900 each, the mechanic's lien contract executed by appellees to Ingraham, as valid .and binding instruments in his favor, but sought to cancel said instruments as an obligation or liability in any respect against appellees. Appellant voluntarily, but its plea of intervention, became a party to the suit as instituted, not only for the purpose of determining the rights asserted by it adversely to the original parties, but for the purpose of determining all matters in issue between said original parties involving in any respect the rights asserted by appellant as if he had been made an original party defendant. The case as made by the pleadings on the part of appellees not only involved the validity of said notes and mechanic's lien contract in the hands of the original defendant, Ingraham, but, on the filing of plea of intervention by appellant, all rights asserted by it which would tend to create in any respect a liability in its favor as against appellees on account of said instruments became involved, and, in passing upon the right of appellees to the relief sought, were properly determined so as to reach a final conclusion of the issues involving the right of appellees to have said notes and mechanic's lien contract canceled, and not only the right of appellant to assert and foreclose its pledgee's lien on the note for $3,500, but its ultimate right to recover thereon as the holder of said notes as an innocent purchaser for value, as well as its right to foreclose the mechanic's lien contract executed to secure the payment of same. The rights under the notes and said mechanic's lien contract were as much before the court to be determined so as to give appellees the full measure of relief sought as was the right of the court to determine the statutory mechanic's lien sought to be enforced by appellant against appellees, and its claim

against Ingraham for personal liability on account of the lumber and material alleged to have been sold by it to Ingraham for the purpose of constructing the improvements on the premises involved on this appeal. The mere fact that appellant sought to limit the determination of its asserted claim in the subject-matter of the litigation between appellees and Ingraham could not serve as a means of preventing the trial court from exercising its jurisdiction to hear and fully determine all questions involving not only the validity of said instruments as between appellees and Ingraham, but the legal liability existing against appellees on account of said instruments in the hands of appellant, as the rights asserted by it were so interrelated with the issues made between the original parties to the suit as to be necessarily involved in passing upon and determining the right to the relief sought by appellees. Smalley v. Taylor, 33 Tex. 668; Ragland et al. v. Wisrock, 61 Tex. 391.

[2] We therefore hold that the issues pleaded by appellees against Ingraham as defendant in the court below were relevant and material to the rights of appellant as intervener, and that the legal effect of the findings of the jury under the pleadings in this case on appellant's right to said $3,500 note, as well as to the $900 note, was to put it in the attitude of a holder of said notes "not in due course," and subject to all of the defenses existing in favor of appellees against said notes in the hands of Ingraham at the time appellant acquired possession of them from the original payee. As to the facts established, we are limited to the answers of the jury to the special issues submitted and to the findings of additional facts by the trial judge. Having recourse to same, we find that the contractor did not complete the house according to the plans and specifications, but, to the contrary, abandoned the construction of same September 18, 1920; that appellant furnished material to the value of $770 to the contractor for the construction of the house before he abandoned it; that appellant did not at any time offer to complete the construction of the house in place of and for the contractor, and gave no notice to appellees that any material had been furnished by it prior to the filing of its plea of intervention; that appellees had satisfied all claims of which they had notice when they filed suit; that Ingraham used fraud in obtaining the execution of the two notes for $3,500 each and the two notes for $900 each, and the lien securing same; that prior to and at the time of the execution of said notes and mechanic's lien contract the property on which the house was to be built was, and continued to be, the homestead of appellees; that appellant acquired the possession of the $3,500 note not earlier than September 18, 1920, and not later than September 20, 1920.

[3] Neither in the findings of fact by the jury nor the enumerated findings by the trial judge is there to be found any finding with reference to whether or not the notes claimed by appellant to be held as collateral security were payable to order or acquired by indorsement. Therefore we must assume in support of the judgment that the notes were payable to order, and that the transfer of same to appellant was without indorsement, and hold that such transfer only vested in the appellant such title as the transferor, Ingraham, had therein, and, further, that it acquired in addition to such title the right to have the indorsement of Ingraham.

The right of appellant to said notes as a holder in due course is determined by the following provision of the Uniform Negotiable Instruments Act (Acts 1919, c. 123, § 49, now article 6001a49, Complete Texas Statutes 1920):

"Where the holder of an instrument payable to its order transfers it for value without indorsing it, and the transfer vests in the transferee such title as the transferor had therein, and the transferee acquires, in addition, the right to have the indorsement of the transferor. But for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the indorsement is actually made."

Had it been established that the notes were transferred before maturity for value and without notice of defects, by proper indorsements as collateral security, although for a pre-existing debt, appellant would have been protected as a bona fide purchaser. Third National Bank of Springfield, Mass., v. National Bank of Commerce et al. (Tex. Civ. App.) 139 S. W. 665; Martin et al. v. German-American National Bank (Tex. Civ. App.) 102 S. W. 131; article 6001a49, supra.

It not being inconsistent with the record, we must assume, in support of the judgment, that the notes were transferred without indorsement as provided for in said article 6001a49, supra, the existence of such fact being necessary to sustain the judgment of the lower court. Therefore the negotiation of the notes so as to make the appellant a holder in due course by proper indorsement has never been made, as the negotiation for that purpose takes effect only as of the time and at the date when the indorsement is actually made; wherefore appellant's title to said notes was subject to equities against the payee, Ingraham. Schneider v. Johnson, 161 Mo. App. 375, 143 S. W. 78; Mayers v. McRimmon, 140 N. C. 640, 53 S. E. 447, 111 Am. St. Rep. 879; Foster's Adm'r v. Metcalfe, 144 Ky. 385, 138 S. W. 314; Landis v. White, 127 Tenn. 504, 152 S. W. 1031.

[4, 5] In view of the fact that the execution of said notes was acquired through fraud on the part of Ingraham, without con-

sideration, and that appellant did not acquire them in due course, appellant was not entitled to foreclose its pledgee's lien on same as collateral security or to recover on said notes any sum of money as a contract obligating appellees as the makers thereof. Even if appellant had acquired the notes by proper transfer so as to become a holder in due course, and thereby entitled to recover thereon against appellees to the extent of the value of the material furnished the contractor, Ingraham, yet appellant would not have been entitled to foreclose the mechanic's lien contract executed by appellees to secure the payment of said notes, because it is essential that two things concur in order to create a mechanic's lien on a homestead, to wit: First, the execution of the contract as provided by law for the improvement of a homestead; and, second, the construction of the improvements as contracted for, at least to the extent of a substantial compliance with such contract before the lien thus contracted for will become in fact valid and existing so as to be enforced under the law.

Here we have a case where, first, the execution of the contract for the lien was procured through fraud; second, the improvements contracted to be erected on the homestead were never finished, but abandoned by the contractor on the day the notes were acquired by appellant as collateral security for a pre-existing indebtedness. Hence it follows that, even if the notes had been acquired by appellant in due course, it would not have been error for the trial court to have refused to foreclose the lien claimed to have been created and existing by virtue of said mechanic's lien contract on appellees' homestead. Murphy v. Williams, 103 Tex. 155, 124 S. W. 900.

This leads us to the conclusion that the judgment of the court in disposing of all the rights asserted by appellant in the subject-matter of the litigation between the original parties to the suit should be affirmed.

In view of the fact that the record disclosed that appellant furnished certain material which went into the construction of the improvements on appellees' homestead, we have concluded that the judgment should be affirmed without prejudice to the rights of appellant to prosecute in another action any claim against appellee W. H. England which may have at any time existed in favor of appellant on account of lumber and material sold by it to the contractor, Ingraham, and used either by said contractor in the construction of the house on appellees' homestead premises or by appellees, as this question of liability was not involved in any of the issues disposed of in the court below.

The judgment of the court below is therefore accordingly affirmed without prejudice, as above stated, to appellant.