## ELLINGTON v. COMMERCIAL STATE BANK OF SAN AUGUSTINE.*
### (No. 1578.)

Court of Civil Appeals of Texas. Beaumont. Feb. 27, 1929.

Rehearing Denied March 13, 1929.

J. R. Bogard, of San Augustine, and W. I. Davis, of Center, for appellant.

W. T. Davis, of San Augustine, for appellee.

HIGHTOWER, C. J. Appellee, Commercial State Bank of San Augustine, instituted this suit on the 26th day of June, 1926, against appellant, J. H. Ellington, upon the following note, pleaded in hæc verba:

"San Augustine, Texas, 3/10/1925.

"Sept. 1, 1925, without grace, after date, I, we or either of us, promise to pay to the order of Commercial Guaranty State Bank, of San Augustine, Texas, at Commercial Guaranty State Bank, of San Augustine, eighteen hundred and no/100 dollars, $1800.00.

"For value received, with interest at the rate of ten per cent. per annum from maturity until paid, and ten per cent. additional as principal and interest unpaid for attorney's fees if placed in the hands of an attorney for collection, or collected through the ——— probate court.

"This note is secured by pledge of the securities mentioned on the reverse hereof, with the right to call for additional security should the same decline, and on failure to respond, this obligation shall be deemed to be due and payable on demand, with full power and authority to sell, and assign and deliver the whole of the said property or any part thereof, or any substitute thereof, or any addition thereto, at public or private sale, at the option of said Commercial Guaranty State Bank, on the nonperformance of the promise, and without further notice, applying the

net proceeds, first, to the payment of this note, and the balance, at the option of the said Commercial Guaranty State Bank, to any other liabilty to said Commercial Guaranty State Bank, now existing, or which may hereafter accrue and accounting to me for the surplus, if any, it is further agreed that the pledgee shall have the right to buy in the said securities at market rate at paid private or public sale. Protest, notice of protest, and nonpayment waived and privilege of renewal allowed by indorsers without notice.

"J. H. Ellington.

"Due————.

"362————

"P. O. Address————."

Appellee pleaded that it was the owner of the note, having purchased it "in due course, paying a valuable consideration therefor." Appellant answered by general and special demurrers, general denial, and certain special pleas, all of which were excepted to, but all exceptions overruled. The nature of these pleas will be given in connection with our discussion of appellant's bills of exception on the exclusion of evidence. Judgment was entered in appellee's favor on an instructed verdict for the relief prayed for.

In making its case, appellee offered in evidence the note, which bore no indorsement. By proper evidence it showed the insolvency of the bank named as payee in the note, the transfer in writing to it of all the assets of the insolvent bank by Chas. O. Austin, banking commissioner, and the approval by the district court of San Augustine county of the contract between it and the banking commissioner. Appellee further showed that it was chartered under the Texas banking laws and authorized to do business under certificate dated June 22, 1925. It further showed that this note was delivered to it as part of the assets of the insolvent bank. When appellee rested, appellant offered evidence in support of the following issues, which we take from his brief:

"1. That the note was merely an accommodation note, representing a balance on a previous note for $3,000.

"2. That said note was secured by all the collateral held by Commercial Guaranty State Bank, belonging to R. N. Stripling in his individual name or in his trade name of R. N. Stripling Drug Company; that at the time the $3,000 note was executed, of which the $1,800 note was a part, R. N. Stripling placed collateral to extent of more than $9,000 with Commercial Guaranty State Bank to secure it.

"3. That said note was to be paid out of the first collections made out of said collateral.

"4. That it had been paid out of said collateral.

"5. That plaintiff had in its possession collateral pledged to secure said note suffi-. cient and more than sufficient to pay it in full.

"6. That under the contract and agreement made at the time of the execution of the $3,000 note, and renewed at the time of the execution of the note in suit for $1,800 the defendant, J. H. Ellington, was not to be required under any circumstances to pay said note.

"7. That Commercial State Bank was not a purchaser in due course, for value without notice.

"8. That the officers of plaintiff bank and those of the defunct bank were practically the same, and took said note, if at all, with notice of the circumstances under which it was executed.

"9. That it was executed without consideration."

All these issues were pleaded specially by appellant as a defense against the note. In substance, he pleaded that in 1923, R. N. Stripling was indebted to the bank named in the note as payee in excess of the sum that the bank could lawfully loan him; that the banking commissioner had made exceptions to this loan and was threatening to charge it off the bank's books unless paid; that Stripling was not able to pay it; that the bank, acting through its vice president and general manager, MacRae Thompson, and Stripling, acting for himself, requested appellant to sign a note to the bank in the sum of $3,000, this being the excess loan to Stripling, which was causing the bank trouble, and which was evidenced at that time by an overdraft, representing to appellant that the execution by him of this note and the credit of its proceeds to the account of Stripling would reduce Stripling's loan to its legal limits; that, as an inducement to appellant to execute the note, the bank and Stripling agreed that all of Stripling's collateral at that time held by the bank as security for his indebtedness should be first applied to the note to be executed by appellant, and as a further inducement Stripling agreed to deliver to the bank additional collateral in the sum of $9,000, all this collateral to be held by the bank as security for the note to be executed by appellant; that is, a first lien was to be created against this collateral as security for said note; that, relying upon these representations, he executed a note to the bank in the sum of $3,000, with the proceeds of which Stripling was given credit; that from time to time the bank collected on the collateral held by it, and on the date the note sued on was executed had reduced the note to $1,800, and on that date appellant renewed his note under the same conditions under which the original note was executed; that the renewed note was secured by a first lien against all collateral of Stripling's held by the bank; that the bank collected from this collateral more than enough to pay the note in full, but failed to credit this note therewith; that the

bank, in addition to the collateral collected, held collateral of a value in excess of the amount due on this note, and that all of this collateral passed into the hands of appellee and was held by appellee subject to the conditions under which he signed the notes sued on. Appellant further pleaded an agreement with the bank that in no event was he to be held liable on the note. He denied that appellee was a holder in good faith. He pleaded that the officers of the appellee bank were practically the same as the officers of the insolvent bank. He also pleaded failure of consideration and that the note was accommodation paper, and that he received no personal benefit whatever from said note, but in executing the same acted only in accommodation of Stripling and the bank.

■ All evidence offered by appellant on the issues as summarized above was excluded by the court on the following grounds: "Irrelevant and immaterial, because (a) said testimony is offered in support of an agreement varying the terms of a promissory note; (b) and to establish an agreement between the active vice president and the defendant in violation of a trust relationship; and (c) because said testimony is offered in support of an agreement void as against public policy and therefore insufficient in law as a defense to plaintiff's cause of action; and (d) it is shown by the evidence that plaintiff purchased the note in due course and is now the owner thereof." The court did not err in rejecting evidence to the effect that appellant was in no event to be liable on the note. Bank v. Moody, 86 Wash. 286, 150 P. 425, L. R. A. 1916A, 1215; Bank v. Watson, 99 Kan. 686, 163 P. 637. Such evidence would have contradicted appellant's written promise to pay, and was therefore not admissible.

■■ The note sued upon would have been subject to the defense pleaded by appellant, and the excluded evidence would have been admissible, had the suit been instituted by the original payee. The testimony offered, except on the issue that appellant was in no event to be liable on the note, did not vary its terms; that it was secured by the collateral and to be paid from the proceeds thereof; that it had been so paid, and that the value of the collateral was more than the amount of the note; that appellant was an accommodation maker of the note were issues collateral to the execution of the note, and in no sense varied or contradicted its terms. The agreement by the vice president that this note was to be secured by all the collateral deposited by Stripling to secure his indebtedness was not in violation of his trust relation to the bank. This agreement took nothing from the bank nor decreased in the least its security for the Stripling indebtedness. But by making this agreement the vice president saved to the bank all that portion of Stripling's indebtedness that the banking commissioner was threatening to charge off.

The loan had already been made by the bank to Stripling. He was not able to pay it. Under the agreement the bank advanced him no additional funds. The agreement did not affect the validity of the loan. Therefore it was not a fraud against the bank, nor was it against the public policy of the state. As we understand Goldstein v. Union National Bank, 109 Tex. 555, 213 S. W. 584 (opinion of Supreme Court answering certified questions), and 216 S. W. 409 (opinion by Court of Civil Appeals in response to answers to certified questions), and Commonwealth National Bank v. Goldstein, 261 S. W. 538 (opinion of Court of Civil Appeals on second appeal), all the exceptions reserved by appellee to appellant's proffered testimony were denied, and it was held in those cases that the defenses pleaded by appellant were available against one not a holder in due course, and, if found by a jury, would relieve him of liability.

■■ If appellant was a holder in due course, it took the note free of all equities and the judgment would have support. But, if it was not a holder in due course, then the note was subject to the same defenses in its hands as in the hands of the original payee. After careful consideration, we have concluded that appellee was not a holder in due course. We think this conclusion follows on the following grounds:

Appellee, by the express provisions of its contract with the banking commissioner, agreed to carry out all contracts of the insolvent bank according to their terms, whether embodied in the schedule enumeration of liabilities or not. The contract appellant tried to prove with the insolvent bank was saved to him by these express terms of the contract under which appellee held the note, and it was therefore error to refuse him the right to prove the contract upon which the note was executed.

■ Again, we do not think appellee was a holder in due course under our Negotiable Instrument Act. Articles 5932–5935, R. S. 1925. Under article 5935 one can be a holder of negotiable paper payable to order only when it has been negotiated and delivered to him in accordance with the provisions of this act. Under section 30, such paper is negotiable by the indorsement of the holder completed by delivery. Under section 31, the indorsement must be written on the instrument itself, or upon a paper attached thereto. Under section 49, the transfer of a negotiable instrument payable to order without indorsement vests in the transferee such title as the transferor had therein with the right to have the endorsement of the transferor. But, for the purpose of determining whether the transferee is a holder in due course, this section expressly provides: "The negotiation takes effect as of the time when the indorsement is actually made."

Now in this case indorsement was never made as the law requires, nor was there any

promise that it should be made; that is to say, no indorsement was ever written on the note, or on a paper attached thereto, but appellee's title rested in the contract between him and the banking commissioner. Under section 49, as construed by the courts, appellee was not a holder in due course. The Dallas Court of Civil Appeals, in Ingraham v. England, 258 S. W. 278, held that the transferee without due indorsement was not, under section 49, a holder in due course. The Supreme Court of Minnesota, in Kiefer v. Tolbert, 128 Minn. 519, 151 N. W. 529, held that the transfer without indorsement vests in the transferee the legal title of the transferor, but subject to equities until the indorsement is made. The Supreme Court of Illinois in Barker v. Barr, 192 Ill. 460, 61 N. E. 388, held that a transfer of a negotiable note payable to order without indorsement has no more effect in cutting off equities than the assignment of a chose in action, and in further illustration of its proposition held that in general the assignee of a chose in action is subject to equities against the assignor arising before notice to the debtor of the assignment. The authorities construing section 49 have been collated by Professor Brannan in his treatise on "The Negotiable Instruments Law," to which we have had access in our study of this section.

Having determined on two grounds, as a matter of law, that appellee was not a holder in due course, it is not necessary for us to determine the legal effect, on this issue, of the fact that the officers of appellee bank were the same as the officers of the insolvent bank, except that MacRae Thompson of the insolvent bank was not made an officer of appellee bank, and two new officers were added to the directorate of the new bank that were not officers of the insolvent bank.

For the reasons given, the judgment of the trial court is reversed, and the cause remanded for a new trial.