SMITH et al. v. HOLLOWAY et al.

No. 8574.

Court of Civil Appeals of Texas. Austin.

March 9, 1938.

Rehearing Denied April 6, 1938.

Wilkinson & Wilkinson, of Brownwood, and G. A. Walters, of San Saba, for appellants.

Woodruff & Holloway, of Brownwood, and F. D. Wright, of Cisco, for appellees.

BLAIR, Justice.

As concerns this appeal appellees, Sterling C. Holloway and his assignees, sued appellants, Brooke Smith, Sr., and the heirs of his deceased son and daughter, Brooke Smith, Jr., and Mrs. Lola D. Lester, herein referred to as Brooke Smith associates, to establish title to the assets and capital stock of Brooke Smith Realty Company of Brownwood, a corporation, and to three notes, aggregating $33,000, executed by said corporation to the Bank of Fredericksburg, and secured by deed of trust liens on the real estate of said corporation. These properties were purchased by Sterling C. Holloway from D. J. Hoerster, receiver of the Bank of Fredericksburg, for $1,000 and the assumption of more than $7,000 of taxes, in accordance with the order of the district court of Gillespie county, which appointed the receiver. By answer herein Brooke Smith associates alleged that the written contract by which the capital stock of said corporation was purported to have been sold to the members of the Bank of Fredericksburg was by a prior parol agreement intended as a mere pledge or hypothecation of the stock as security for certain debts of Brooke Smith & Co. to the Bank of Fredericksburg, which had been paid; that the three notes executed by the members of the Bank of Fredericksburg while they so held the stock certificates were therefore invalid; and that purchaser Holloway knew, or by the exercise of ordinary diligence or inquiry should have known, of such parol agreement. By supplemental pleadings appellees contended that the parol agreement alleged varied, contradicted, and destroyed the terms of the written instrument pledging the stock as security for an indebtedness due the Bank of Fredericksburg, and the written instruments selling the stock to members of the Bank of Fredericksburg; but subject, however, to the pledge lien on the stock. After hearing

the evidence relating to the parol agreement the trial court sustained this contention of appellees, instructed a verdict, and accordingly rendered judgment establishing the title of appellees to the properties involved in this suit.

The material facts and transactions are as follows: Prior to the dates of the written instruments here involved Brooke Smith, Sr., organized Brooke Smith & Co., a private banking partnership composed of himself and his son and daughter, Brooke Smith, Jr., and Mrs. Lola D. Lester, both now deceased. He also organized Brooke Smith Realty Company of Brownwood, Tex., a corporation, with a capital stock (500 shares) of $50,000; and Brooke Smith Realty Company of Houston, Tex., a corporation, with a capital stock (1,000 shares) of $100,000 all of which stock was owned by himself and his said son and daughter. In 1921, Brooke Smith & Co., the banking partnership, became insolvent and ceased to do business, and at which time it was heavily indebted to the Bank of Fredericksburg, a private banking partnership composed of Temple D. Smith, a brother of Brooke Smith, Sr., Ad. Gold, Albert Koennecke, Hulda Walter, and Elsa Walter. On May 1, 1924, Brooke Smith, Sr., Brooke Smith, Jr., and Lola D. Lester, joined by her husband, E. Lester, being all the members of the Brooke Smith & Co., the private banking partnership, executed an extension and pledge or hypothecation of security agreement to the Bank of Fredericksburg, which recited in substance as follows:

(1) That on February 6, 1924, Brooke Smith, Sr., Brooke Smith, Jr., and Lola D. Lester, joined by E. Lester, pledged to the Bank of Fredericksburg, with other collateral, 500 shares of stock in Brooke Smith Realty Company of Brownwood, Tex., to secure an open account due to said bank by Brooke Smith & Co. in the sum of $83,409, subject, however, to prior liens of the Interstate National Bank, the Metropolitan Bank, the Commerce Trust Company, and the Fidelity Bank & Trust Company, all of Kansas City, Mo.

(2) That said indebtedness is long past due and Brooke Smith & Co. is unable to pay the same, the balance due being $84,085.57; that the debtors have converted said open account into 61 notes as follows: 40 notes of $1,000 each; 20 notes of $2,000 each; and one note of $4,085.57, all dated May 1, 1924, and due six months after date.

(3) That Brooke Smith, for the purpose of securing said indebtedness and any subsequent or future indebtedness, pledged and transferred to said Bank of Fredericksburg, "the following securities, to-wit:

"1000 shares of stock in Brooke Smith Realty Company of Houston, Texas; and 500 shares of stock in Brooke Smith Realty Company of Brownwood, Texas.

"Subject and subject only to the prior claims of the Interstate National Bank, the Metropolitan Bank, the Commerce Trust Company, and the Fidelity National Bank & Trust Company, all of Kansas City, State of Missouri, all of. which shares of stock hereinbefore mentioned are now in the possession of E. R. Swentzel of Kansas City, Mo., who holds the same in trust for the herein last four mentioned banking institutions as collateral security for their claims. Upon the full and final payment of the said Kansas City banks the said E. R. Swentzel is hereby authorized and instructed to deliver all of said shares to the said Bank of Fredericksburg, Unincorporated, to be held by it as collateral security as hereinabove provided."

(4) That upon default of the payment of the indebtedness or any part thereof the Bank of Fredericksburg was authorized to sell all or any part of the stock held in pledge to secure the indebtedness, at public or private sale, and to credit the proceeds as follows:

"Said Bank to receive the proceeds of such sale or sales, which shall be duly credited to the account of said debtors or on said debts and liabilities thereby secured, said bank to have option and discretion as to how credited or applied.

"This instrument and all rights and powers hereunder, together with the securities then held in pledge hereunder, may be transferred and assigned by said Bank upon such time and upon such terms as it may deem advisable, and such assignee shall succeed to all the rights and powers hereunder."

On May 7, 1925, the following instrument was executed by the parties whose names are signed thereto:

"State of Texas,

"County of Brown.

"Whereas, Brooke Smith & Company, Bankers, are largely indebted to the Bank of Fredericksburg (Unincorporated) a co-partnership firm, composed of Temple D. Smith, Ad. Gold, Albert Koennecke, Hulda

Walter and Elsa Walter, and Brooke Smith, Sr., and Brooke Smith, Jr., Mrs. Lola D. Lester, joined by her husband, E. Lester, said last named persons being all the members and partners of the co-partnership firm of Brooke Smith & Company, Bankers, have heretofore, to-wit, on or about the 1st day of May, A. D. 1924, pledged and hypothecated among other securities, 500 shares of capital stock in Brooke Smith Realty Company, of Brownwood, Texas, to secure the payment of the above mentioned indebtedness, and to secure further obligations owing to said Bank of Fredericksburg by said Brooke Smith & Company, Bankers, as is evidenced by a certain written contract of hypothecation, bearing date the 1st day of May A. D. 1924; and

"Whereas, the said Brooke Smith, Sr., Brooke Smith, Jr., and Lola D. Lester desire to sell and transfer the aforesaid 500 shares of capital stock in the Brooke Smith Realty Company of Brownwood, Texas, to Temple S. Smith, Ad. Gold, and Albert Koennecke, subject to the indebtedness hereinabove mentioned:

"Now, therefore, it is expressly agreed between the said Brooke Smith, Sr., Brooke Smith, Jr., Lola D. Lester, joined by her husband E. Lester, and the firm of Brooke Smith & Company, Bankers, on the one part, and the said Temple D. Smith, Ad. Gold and Albert Koennecke, and the Bank of Fredericksburg, on the other part, that the said Temple D. Smith, Ad. Gold, and Albert Koennecke, their heirs and assigns, do purchase the aforesaid 500 shares of capital stock in the Brooke Smith Realty Company, of Brownwood, Texas, subject to the aforesaid hypothecation contract, and subject to the lien created and fixed by said contract, and all the terms and provisions thereof, and the lien therein and thereby created on the aforesaid property shall in all things remain in full force and effect, according to the terms, provisions and conditions contained in the aforesaid hypothecation contract.

"Witness our hands, this the 7th day of May, A. D. 1925.

"Brooke Smith & Company, Bankers,
"By Brooke Smith, Sr.,
"Brooke Smith, Jr.,
"Lola D. Lester,
"E. Lester.
"The Bank of Fredericksburg,
"By Albert Koennecke,
"Ad. Gold,
"Temple D. Smith."

On the same day, May 7, 1925, Brooke Smith, Sr., Brooke Smith, Jr., and Lola D. Lester, joined by her husband, E. Lester, by written indorsements on each of their stock certificates evidencing the 500 shares of stock of Brooke Smith Realty Company of Brownwood, transferred and assigned same to Albert Koennecke, Ad. Gold, and Temple D. Smith, three members of the Bank of Fredericksburg, each indorsement being identical, except as to names of the parties.

The following minutes of the stockholders' meeting of the same date, May 7, 1925, appear in the corporate minute book of Brooke Smith Realty Company of Brownwood:

"Brownwood, Texas,

"A regular called meeting of the stockholders of Brooke Smith Realty Company of Brownwood, Texas, at the office of the Company, all stockholders being present, consisting of Brooke Smith, Sr., Brooke Smith, Jr., and Mrs. Lola D. Lester; the following proceedings were had, to-wit:

"Brooke Smith, Jr., having reported that he had sold all of his stock in the company to Adolph Gold consisting of One Hundred Shares at Sixty Dollars per share and tendered his resignation as a director; said proposition of sale was ratified and resignation accepted by the stockholders, and Mr. Adolph Gold was duly elected as a director in the company to serve for the ensuing year, or until his successor is duly elected and qualified;

"Mrs. Lola D. Lester reported that she had sold all of her stock in the Company to Mr. Albert Koennecke for Sixty Dollars per share, being one hundred shares and tendered her resignation as a director; said proposition of sale was ratified by the stockholders present and resignation accepted, and Mr. Albert Koennecke was duly elected as a director of the company for the ensuing year, or until his successor is duly elected and qualified;

"Mr. Brooke Smith, Sr., reported that he had sold all of his stock in the company, consisting of three hundred shares to Mr. Temple D. Smith for sixty dollars per share and tendered his resignation as a director, said proposition of sale was duly ratified by the stockholders and the resignation duly accepted, and Mr. Temple D. Smith was duly elected as a director of the company to serve for the ensuing year, or until his successor is duly elected and qualified

"The transfer of the stock was duly made at the time of and in the order above written.

"There being no further business the meeting adjourned.

"Approved:

"Brooke Smith, Sr., President.

"Brooke Smith, Jr., Secretary."

These transferred stock certificates were duly attached to the stubs of the stock book of the corporation, in accordance with the indorsements thereon and the minutes quoted; and the aforementioned contract of sale and pledge clearly provided that Brooke Smith associates sold all of the stock of the said corporation to three of the partners of the Bank of Fredericksburg, subject to pledge liens existing in favor of the said bank and subject to the prior liens held by the Kansas City banks. Shortly after the aforementioned transactions, Temple D. Smith transferred to Hulda Walter and Elsa Walter their proportionate part of the stock, showing that all stock of the corporation was owned by the partners of the Bank of Fredericksburg and in the same proportions as were their respective interests in the bank. And from date of the sale of such stock, May 7, 1925, the minute books and the records of the corporation make no mention of Brooke Smith associates; and from that date the affairs of the corporation were conducted by the partners of the Bank of Fredericksburg, who were the stockholders and the duly appointed and acting directors and officers of said corporation, as reflected by its minute books and records; and on August 1, 1931, said Brooke Smith Realty Company executed the three notes in suit, aggregating $33,000, and secured them by deed of trust liens on all of its property here involved. These notes represented the $27,000 balance, with interest, due the Kansas City banks and secured by the first lien on the stock referred to in the above-quoted contract transferring the stock; and which notes were paid by the Bank of Fredericksburg. After the aforementioned transactions, but prior to the sale of the properties by the receiver to Holloway, Brooke Smith, Jr., Mrs. Lola D. Lester, Temple D. Smith, Ad. Gold, and Albert Koennecke each died, and their heirs succeeded to their respective rights in the premises.

In February, 1932, the Bank of Fredericksburg become insolvent, and its assets were placed in the hands of a receiver by the district court of Gillespie county, who resigned, and the court appointed D. J. Hoerster, who duly qualified as such receiver; and by virtue of his appointment and also by assignment by all of the partners of the Bank of Fredericksburg he was vested with title, possession, and control of its properties and assets, among which were the assets and the certificates of stock of the partners of the Brooke Smith Realty Company of Brownwood; the assets of which consisted of vacant lots and other real estate, practically all unimproved, in and near the city of Brownwood, Tex.

At the time of the appointment of the receiver more than $50,000 of the indebtedness secured by the stock in question, as shown by the aforementioned instruments, was unpaid and past due; and the three notes in suit were likewise due and unpaid; and the same was true at the time Holloway purchased the properties from the receiver and at the time of the trial herein.

In liquidating the affairs of the Bank of Fredericksburg the receiver offered for sale all of the stock and assets of the corporation, Brooke Smith Realty Company of Brownwood, and listed them with C. W. Trigg, a real estate broker of Brownwood, who after several conversations with Sterling C. Holloway obtained his offer of $1,000 for the property in suit, subject to taxes against it exceeding $7,000. Trigg submitted the offer to the receiver, who with a depositors' committee of the Bank of Fredericksburg went to Brownwood and investigated the property and the adequacy of the offer therefor; and, upon the testimony of the receiver, Mr. Petsch, attorney for the receiver, and the recommendation of the depositors' committee, the court authorized the sale. When notified of this order Sterling C. Holloway went to Fredericksburg to investigate the title to the property, and after doing so paid the receiver $1,000 in cash, and the receiver executed and delivered to him proper transfers of the stock of the corporation; and on the same day transferred the three notes in suit and deeds of trust securing them on the property to R. R. Holloway. Thereafter the sale was reported by the receiver to the court, and was duly approved and confirmed, the decree vesting title in Sterling C. Holloway to the stock and assets of the corporation, and in R. R. Hollo-

way to the three notes and deeds of trust securing them.

Brooke Smith associates admitted that the written instrument of May 1, 1924, gave a second pledge lien on the stock of the Brooke Smith Realty Company to secure an indebtedness of more than $85,000 due the Bank of Fredericksburg; that the several written instruments of May 7, 1925, constituted on their face an absolute sale of the stock to the three partners named, subject to the liens in favor of the Kansas City banks and the Bank of Fredericksburg; and that there was still due and unpaid more than $50,000 of the indebtedness due the latter bank. They alleged, however, and Brooke Smith, Sr., sought to testify, and the jury having been retired, did testify in substance, that prior to the execution of the instruments dated May 7, 1925, selling the stock subject to the aforementioned liens, he had a verbal agreement with Temple D. Smith, acting for himself and the partners of the Bank of Fredericksburg, to the effect that the stock of the Brooke Smith Realty Company of Brownwood would be so transferred for the convenience of the Bank of Fredericksburg in the event of the death of Brooke Smith, Sr., who had the sole and complete management of all the properties of Brooke Smith associates; but not in fact as a sale of the stock, nor as security for the indebtedness described in the instruments, but to secure a new and additional loan of about $25,000 to Brooke Smith & Co., the private banking partnership, with which to pay off its indebtedness to the Kansas City banks of more than $30,000, which had been compromised for about $25,000, and which was secured by the first pledge lien on the stock. That by such prior verbal negotiations it was further agreed that when Brooke Smith, Sr., should repay the Bank of Fredericksburg the sum of $30,000 out of the proceeds of the sale of the properties of the Brooke Smith Realty Company of Brownwood, all of its said stock should be returned to Brooke Smith associates, free of any lien existing in favor of the Bank of Fredericksburg in virtue of such transactions, or under the specific terms of the said written instruments, dated May 1, 1924, pledging the stock as security, and dated May 7, 1925, selling and transferring the stock subject to such indebtedness. He further testified that he sold more than $37,000 worth of the corporation's properties and paid the proceeds to the Bank of Fredericksburg. All of this testimony was ex-

cluded from the jury, because, among other reasons, it varied the terms of the written pledge agreement dated May 1, 1924, the terms of the written contract selling the stock, the written transfers on the stock certificates, and the written minutes of the corporation, all dated May 7, 1925, under the rule that, where the parties have reduced to writing that which appears on its face to be a complete and certain agreement establishing their respective rights and obligations as regards the subject matter, it will be conclusively presumed, in absence of fraud, accident, or mistake, that the writing contains the whole agreement of the parties; and that parol evidence of prior or contemporaneous agreements is not admissible for the purpose of adding to or varying the terms of the written agreement.

Appellants contend that the trial court erred in so rendering judgment for appellees, and by their first proposition they present the following general rule as applicable: "It is a familiar rule that where a question arises as to whether a written instrument was intended as a contract of purchase, or merely as one of security, a court of equity looks beyond the terms of the instrument to the real transaction; and when that is shown to be one of security, and not of sale, the court will give effect to the actual contract of the parties. As the equity upon which the court acts in such cases arises from the character of the transaction, any evidence, whether written or oral, tending to show this is admissible."

With this general proposition of law there can be no disagreement; but it has no application here because the parol agreement alleged and sought to be proved varied, contradicted, and destroyed the terms of the written instruments pledging the stock as security for an indebtedness of more than $85,000 due the Bank of Fredericksburg. Briefly restated, the parol agreement provided that, if the Bank of Fredericksburg would make a new loan or pay off an indebtedness of Brooke Smith & Co. to the Kansas City banks of about $30,000, which had been compromised for about $25,000, and which was secured by a first pledge lien on the stock of Brooke Smith Realty Company; and that when enough of its assets were sold to repay the Bank of Fredericksburg $30,000, then all of the stock would be returned to Brooke Smith associates free of the second pledge lien on the stock created by the

written pledge agreement of May 1, 1924, and continued in full force and effect by the written instruments of May 7, 1925, selling the stock to the three partners of the Bank of Fredericksburg subject to such lien. The purpose of this parol agreement was not merely to show that the written instruments selling the stock were intended only as a pledge of the stock as security for the indebtedness described; but its purpose was also to vary, contradict, and to completely destroy the second pledge lien on the stock as specifically provided for by the written pledge instruments. Brooke Smith associates did not seek to recover the stock subject to the second lien in favor of the Bank of Fredericksburg; but sought to recover it free of the second lien securing the payment of the $85,000 owing said bank, and of which indebtedness there was due and unpaid at the time of the trial more than $50,000. So it is manifest that this was an attempt to set up a parol agreement to defeat entirely the second lien created by the written pledge agreement, and was an attempt to set up a parol agreement to the effect that, if Brooke Smith associates should pay an entirely different indebtedness from that described in and created by the written pledge agreement, then the second lien created by such written pledge agreement should not remain in full force and effect, but that said second pledge lien would be canceled and the stock would be returned free of such lien and indebtedness. Such a parol agreement is contrary to the now well-established rule of this and other jurisdictions that a prior or contemporaneous parol agreement to the effect that a note, lien, or any other obligation evidenced by a written instrument shall never be paid, carried out, or create any liability, is not binding, because its effect is to vary, contradict, or destroy the terms of the written instrument or contract between the parties; and such a parol agreement is not admissible in evidence, nor enforceable even as between the parties to the instrument or contract. And while it is the rule that where the question arises as to whether a written agreement was intended as a contract of purchase or merely one of security, a court of equity will look beyond the terms of the written instrument to the real transaction and will give effect to the actual contract made by the parties; still that rule has never been extended to admit proof of an oral agreement or contract which squarely contradicts the express terms of a written instrument, or destroys a lien or indebtedness created by a written instrument, in absence of a showing that fraud, accident, or mistake attended the execution of the written instrument or contract. Dolson v. De Ganahl, 70 Tex. 620, 8 S.W. 321; Kahn v. Kahn, 94 Tex. 114, 58 S.W. 825; Paris Grocer Co. v. Burks, 101 Tex. 106, 107, 105 S.W. 174, 175; Walter v. Dearing, Tex.Civ.App., 65 S.W. 380; Gill v. Baird, Tex.Civ.App., 32 S.W.2d 941; Jones v. Texas Company, Tex.Civ.App., 80 S.W.2d 761; Ellington v. Commercial State Bank, Tex.Civ.App., 15 S.W.2d 59; 17 Tex.Jur. 793, 794, 822, 830, 845, 854; 49 C.J. 908; 23 R.C.L. 1389.

■■ If it be assumed that the above-quoted instruments were intended as a pledge of the stock as security for the indebtedness due the Bank of Fredericksburg, the title thereto passed under the sale by the receiver, because by express agreement Brooke Smith & Co. authorized the bank to sell the stock either with or without notice; and since the said company had been in default on the indebtedness secured in the sum of more than $50,000, the sale by the receiver of said bank will be regarded as being for the purpose of realizing upon the assets pledged as security for the indebtedness. In other words, since the undisputed evidence showed that the bank had the absolute right to sell the stock upon default in the payment of the indebtedness, and Brooke Smith associates claim to stand in the position of pledgers of the stock, and since a large amount of the indebtedness was past due and unpaid, there exists no basis for pledgers to question the sale by the receiver as not passing good title to the properties to Holloway. Nor can there be any question but that the receiver, acting under authority of the court, could exercise the right of the bank expressly given by the pledge agreement, to sell the stock in satisfaction of the indebtedness, because he was not only vested with title to the properties under the order of the court, but also by written assignments from all the members of the Bank of Fredericksburg who held either the legal title to the stock, or held it in trust to secure the indebtedness due the bank. And as herein stated, Brooke Smith associates did not seek to recover the stock subject to the lien existing in favor of the bank; but sought to recover the stock under a parol agreement that it would

be returned if they paid an indebtedness not described in the written instruments pledging the stock to the bank. King & Company v. Texas B. & Ins. Co., 58 Tex. 669; Dullnig v. Weekes, 16 Tex.Civ.App. 1, 40 S.W. 178, 179; 49 Corpus Juris 995, 999, 1000, and 1001; 33 Tex.Jur. 708.

Our above decision is determinative of all issues in the case and renders unnecessary any discussion of notice of purchaser Holloway of the parol agreement alleged and sought to be proved, or of the question of estoppel on the part of Brooke Smith associates to set up the parol agreement. Suffice it to say that the trial court found that the evidence established these issues in favor of appellees as a matter of law, and after a careful examination of the evidence we sustain the actions of the trial court.

The judgment of the trial court will be affirmed.